COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
            Clements, Felton, Kelsey and Senior Judge Annunziata*
Argued at Richmond, Virginia


DELIO ANZUALDA, JR.
                                                                OPINION BY
v.        Record No. 1719-02-1                    JUDGE ROBERT J. HUMPHREYS
                                                             JANUARY 25, 2005
COMMONWEALTH OF VIRGINIA


                        UPON REHEARING EN BANC

              FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                            Glen A. Tyler, Judge

            William P. Robinson, Jr., for appellant.

            Margaret W. Reed, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        Delio Anzualda, Jr. appeals his convictions, following a conditional plea of guilty, for

one count of possession of cocaine with intent to distribute, in violation of Code § 18.2-248, one

count of possession of marijuana with intent to distribute, in violation of Code § 18.2-248.1, and

one count of possession of a firearm while in possession of cocaine, in violation of Code

§ 18.2-308.4.[1]  Anzualda argues on appeal that the trial court erred in denying his motion to

suppress evidence seized pursuant to a search warrant, contending that the warrant was not

supported by probable case and additionally failed to meet the requirements of the good faith

---

        * Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

        [1] In addition to these charges, Anzualda was charged with five counts of receiving stolen
goods valued at $200 or more, in violation of Code § 18.2-108.  However, the disposition of
those charges is not at issue on this appeal.

exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984). For

the reasons that follow, we hold that the trial court did not err and, therefore, affirm the judgment

of the trial court.

I.  Background

In accord with settled principles of appellate review, on appeal of the denial of a motion

to suppress, we review the evidence and all reasonable inferences fairly deducible from that

evidence in the light most favorable to the Commonwealth, the party prevailing below.  Sabo v.

Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002); Shaver v. Commonwealth, 30

Va. App. 789, 794, 520 S.E.2d 393, 396 (1999).

So viewed, the evidence here establishes that, on September 15, 2000, Officer David

Doughty, an investigator with the Northampton County Sheriff's Office, executed a search

warrant at Anzualda's home.  The warrant was based on an affidavit sworn to by Doughty on the

same day.  The affidavit stated the "material facts constituting probable cause" for the search as

follows:

> On March 17, 2000, Carlos Tolentito and Hildeberto Velasco were
> shot to death with 9 millimeter rounds on Occohannock Neck
> Road.  An individual incarcerated in the Northampton County Jail
> has become a suspect in the offense in that he has made
> incriminating statements to at least three persons.  An intimate
> friend of the suspect has informed the undersigned that the suspect
> informed the intimate friend that he had traded a pistol to an
> individual named as "Cowboy" for marijuana, "Cowboy" being
> known to her as residing at the place to be searched.  The
> undersigned has personal knowledge that "Cowboy" is Delio
> Anzualda.

The affidavit described the "thing to be searched for" as a "9 millimeter pistol and/or

ammunition," and the place to be searched as the:

> dwelling house (single-wide trailer), outbuildings, motor vehicles
> and any other structures or containers on the property located at
> 9182 Franktown Road, Franktown, Va. . . . The property is
> occupied by Delio Anzualda and family.

- 2 -

While searching Anzualda's home, Doughty and his fellow officers found several items that they suspected were stolen.  They also discovered cocaine and related paraphernalia, marijuana, and several firearms.  However, a pistol was not among the items seized.

After Officer Doughty arrested Anzualda, Anzualda made several incriminating statements relating to the drugs and other items discovered during the search.  A grand jury subsequently indicted Anzualda on several charges, including possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and possession of a firearm while in possession of cocaine.

Before a trial on the merits, Anzualda filed a motion to suppress the evidence seized from his home, contending that both the evidence and his resulting statements were obtained in violation of the "Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, Article 1, Section 10 of the Constitution of Virginia."  At the hearing on the motion to suppress, Anzualda argued specifically that the evidence and statements should be suppressed because the affidavit, upon which the warrant was based, failed to "set sufficient facts on its face to cause a reasonably detached magistrate to believe that the subject matter of the search for a pistol was at [Anzualda's] home," reasoning that the affidavit failed to provide a sufficient nexus between the item sought and the place to be searched.  Anzualda further argued that, because the affidavit alleged that the murders occurred on March 17, 2000, but the warrant was not issued until September 15, 2000, "there [was] no way to conclude that the evidence [police] want[ed] to seize or look for [was] at [Anzualda's] residence."[2]  The trial court denied the motion to suppress, reasoning that, even if the warrant was not supported by probable cause, the evidence

_____

[2] In the alternative, Anzualda argued that his statements should be suppressed because Anzualda, who is Hispanic, could not sufficiently understand the officers and, therefore, could not freely and voluntarily waive his rights.  After hearing evidence submitted by the parties, the trial court denied Anzualda's motion on this basis.  Anzualda has not appealed that portion of the trial court's ruling.

- 3 -

was admissible under the Leon exception to the exclusionary rule, which permits the introduction of evidence seized in good faith reliance on a defective search warrant.

Anzualda subsequently entered a conditional plea of guilty to each of the drug-related charges. On appeal, a divided panel of this Court reversed the judgment of the trial court and remanded the case for a new trial. See Anzualda v. Commonwealth, 42 Va. App. 481, 592 S.E.2d 761 (2004). We granted the Commonwealth's petition for *en banc* review, stayed the mandate of the panel decision, and reinstated the appeal. Upon rehearing *en banc*, we affirm the judgment of the trial court and reinstate Anzualda's conviction.

## II. Analysis

Anzualda contends the trial court erred in denying his motion to suppress for two reasons. First, Anzualda argues that the search warrant was defective because it was not based upon probable cause, reasoning that the underlying affidavit "lack[ed] specificity with respect to the time between the communication of the information, and the issuance thereof." Second, Anzualda argues the warrant cannot be "saved" under the good faith exception because it was "so lacking in the indicia of probable cause as to be fatally defective on its face." Specifically, Anzualda contends that the affidavit failed to set forth "any" facts establishing a connection between "the premises to be searched, and a reasonable belief that the evidence to be seized would be located on the premises."

We begin by noting that, although "'[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them,' . . . we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case." McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2000) (*en banc*) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). Further, "[i]n reviewing

- 4 -

a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'" McGee, 25 Va. App. at 197, 487 S.E.2d at 261 (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

### A. Whether the Warrant Was Supported by Probable Cause[3]

Generally, "'[t]he existence of probable cause is determined by examining the totality-of-the-circumstances.'" Janis v. Commonwealth, 22 Va. App. 646, 651-52, 472 S.E.2d 649, 652 (quoting Miles v. Commonwealth, 13 Va. App. 64, 88, 408 S.E.2d 602, 604 (1991)), aff'd en banc, 23 Va. App. 696, 479 S.E.2d 534 (1996). Accordingly, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (citation omitted); see also Tart v. Commonwealth, 17 Va. App. 384, 387, 437 S.E.2d 219, 221 (1993) ("The initial determination of probable cause requires the magistrate to weigh

---

[3] We recognize, as the concurrence has noted, that courts both within this Commonwealth and elsewhere will frequently bypass the issue of probable cause and proceed directly to the question of whether the good faith exception applies. However, we also believe that consistently sidestepping the issue of probable cause in favor of applying the good faith exception will inevitably permit the exception to swallow the rule. Moreover, we disagree with the concurrence's belief that the probable cause issue should be addressed only if the circumstances present a "novel question of law." As the Supreme Court expressly noted in Leon itself, "[e]ven if the Fourth Amendment question is *not* one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation." Leon, 468 U.S. at 925 (emphasis added). Further, "it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue." Id.
        Here, the concurrence suggests that we should avoid any discussion of whether the magistrate had a "substantial basis" for concluding that probable cause existed. However, if we repeatedly fail to address the threshold question of probable cause, we will continue to neglect our duty to adequately educate our magistrates and to provide them with discrete legal guidelines, concomitantly reducing their role in the issuance of warrants to little more than that of a rubber-stamp. Considering the dearth of recent Virginia caselaw on this specific question, and mindful of the fact that we are issuing this opinion *en banc*, we elect to substantively address the question.

the evidence presented in light of the totality of the circumstances."). When determining whether probable cause exists, the magistrate may draw reasonable inferences from the material supplied to him. Williams v. Commonwealth, 4 Va. App. 53, 68, 354 S.E.2d 79, 87 (1987).

However, "[i]t is well settled 'that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.'" Tart, 17 Va. App. at 388, 437 S.E.2d at 221 (quoting Gates, 462 U.S. at 236). Rather, "'the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed.'" Id. at 387, 437 S.E.2d at 221 (quoting Gates, 462 U.S. at 238-39) (alterations in original) (internal quotations omitted); see also Janis, 22 Va. App. at 652, 472 S.E.2d at 652. This deferential standard of review "'is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" Tart, 17 Va. App. at 388, 437 S.E.2d at 221 (quoting Williams, 4 Va. App. at 68, 354 S.E.2d at 87); see also Leon, 468 U.S. at 914 ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable case, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination.").

Anzualda argues that, considering all of the circumstances of this case, the information set forth in the affidavit was insufficient to provide the magistrate with a "substantial basis" for finding probable cause to believe that the pistol sought would be found in Anzualda's home. We agree.

Initially, the warrant, which was issued on September 26, 2000, provides no time frame as to when the murder suspect made the incriminating statements to the confidential informants, nor does it indicate when the alleged marijuana-for-pistol trade occurred. The warrant also fails to indicate when the suspect was incarcerated, and it provides no facts from which the magistrate could have inferred that the alleged trade did, in fact, take place after the murders and before the

suspect's incarceration.  The only date contained in the warrant merely gives the date on which

the murders occurred – March 17, 2000 – some six months earlier.

Generally, "[t]here is no fixed standard or formula establishing a maximum allowable

interval between the date of events recited in an affidavit and the date of a search warrant."

Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000).  "Instead, a warrant

will be tested for 'staleness' by considering whether the facts alleged in the warrant provided

probable cause to believe, at the time the search actually was conducted, that the search

conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity."

Id.; see also Sgro v. United States, 287 U.S. 206, 210 (1932); United States v. McCall, 740 F.2d

1331, 1336 (4th Cir. 1984); Huff v. Commonwealth, 213 Va. 710, 715-16, 194 S.E.2d 690, 695

(1983); Perez v. Commonwealth, 25 Va. App. 137, 142-43, 486 S.E.2d 578, 581-82 (1997).  As

we have noted:

> "'The vitality of probable cause cannot be quantified by simply
> counting the number of days between the occurrence of the facts
> supplied and the issuance of the affidavit.'  United States v.
> Johnson, 461 F.2d 285, 287 (10th Cir. 1972).  Rather, we must
> look to all the facts and circumstances of the case, including the
> nature of the unlawful activity alleged, the length of the activity,
> and the nature of the property to be seized.  Id."

Perez, 25 Va. App. at 142, 486 S.E.2d at 581 (quoting McCall, 740 F.2d at 1336).

Thus, although a six-month lapse, standing alone, would not necessarily compel a finding

that a search warrant was not supported by probable cause, we are troubled by this particular

warrant's failure to identify *any* dates other than that of the murders.  Absent any reference to the

dates on which the described activities allegedly occurred, it is next-to-impossible to determine

whether the information supporting this warrant is recent enough to establish a "fair probability"

that the pistol might be found at Anzualda's home.  Because the officer failed to provide any sort

- 7 -

of a temporal context for the events described, the magistrate did not have a "substantial basis" for concluding that there was probable cause to issue the warrant.

Moreover, we agree that the information provided in the warrant fails to provide a sufficient nexus between the item sought (the pistol) and the premises to be searched. At most, the warrant indicates that: (1) six months earlier, two individuals had been murdered with a pistol; (2) a prison inmate informed three people that he had committed the murders; (3) a friend of the inmate informed the police that the inmate had traded a pistol to "Cowboy" in return for marijuana; (4) "Cowboy" is Anzualda; and (5) Anzualda lived at the premises to be searched.

Based on these facts, the magistrate could have inferred that Anzualda might have had a pistol that might have been given to him by the murder suspect. However, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is [probable] cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978). Noticeably absent from this affidavit are any facts that would have permitted the magistrate to infer not only that Anzualda had a pistol, but that he was keeping that pistol at his home. Although it is generally true that, "in the case of drug dealers, evidence is likely to be found where the dealers live," United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986), this affidavit does not provide any facts supporting the inference that Anzualda was, in fact, a known drug dealer.[4] The affidavit describes but a single drug transaction, which could have

---

[4] Cf. United States v. Payne, 341 F.3d 393, 401 (5th Cir. 2003) (noting that "few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime," and holding that, "[a]lthough this notion does not provide carte blanche for searching a home when one is suspected of illegal activity, the inference before us requires no such unfettered discretion" (internal quotations and citation omitted)); United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999) (upholding magistrate's determination of probable cause where the defendant was "a long-time, successful, drug trafficker," the affidavit "indicated that [the defendant] resided in [the place to be searched]," and "[n]o other residence or drug-dealing headquarters . . . [were] identified in the affidavit," concluding that "[i]t followed that a likely

- 8 -

been an isolated transaction just as readily as it could have been part of a larger scheme.  The affidavit similarly contains no assertion that persons involved in drug transactions tend to keep the fruits of those transactions in their home.  Nor does the affidavit indicate that a pistol had been observed in either Anzualda's possession or in his home.

Although the magistrate is entitled to draw reasonable inferences from the facts set forth in the affidavit, suppositions and guesswork cannot equate to a "substantial basis" for concluding that there is a "fair probability" that the item sought will be found at the place to be searched.  Thus, although the facts listed in the affidavit do provide some basis for believing that the pistol might be at Anzualda's home, this nexus is too tenuous to support a finding of probable cause.  See Janis, 22 Va. App. at 652, 472 S.E.2d at 652 (holding that the magistrate "lacked a substantial basis for finding that probable cause existed" because "[t]he affidavit, while not a 'bare bones' affidavit, failed to provide a 'nexus' that linked the [item sought] to [the place searched]"); cf. United States v. Kenney, 595 F. Supp. 1453, 1461 (D. Me. 1984) ("[W]ithout more than merely the statement in the affidavit that [the defendant] has committed a drug offense, the Court cannot find that there was adequate probable cause to search his house.").

Accordingly, despite the deference we must pay to the magistrate's determination of probable cause, we hold that the magistrate here lacked a "substantial basis" for finding that the facts set forth in the affidavit established probable cause.  See Leon, 468 U.S. at 915 ("Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant

---

place to seek to find incriminating items would be [the defendant's] residence"); United States v. Williams, 974 F.2d 480, 482 (4th Cir. 1992) (*per curiam*) (upholding determination of probable cause to search for drug paraphernalia in motel room based on affidavit establishing that known drug dealer currently resided in the motel room).

was invalid because the magistrate's probable-cause determination reflected an improper analysis of the circumstances . . . .").

### B. Application of the Good Faith Exception

Our conclusion that the search warrant was not supported by probable cause does not, however, end our inquiry into whether the trial court should have granted Anzualda's motion to suppress. Generally, "[w]here law enforcement officers illegally search private premises or seize property without probable cause . . . the illegally seized evidence will be excluded . . . ." Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)). The exclusionary rule, created with the intent of deterring police misconduct, "operates 'as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than [to protect] a personal constitutional right of the party accused.'" Leon, 468 U.S. at 906 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)); see also Derr v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991); Colaw, 32 Va. App. at 810, 410 S.E.2d at 33. However, because "[t]he deterrent effect of the exclusionary rule 'is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant,'" Janis, 22 Va. App. at 653, 472 S.E.2d at 653 (quoting Derr, 242 Va. at 422, 410 S.E.2d at 667), evidence seized pursuant to an invalid search warrant "is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid." Lanier v. Commonwealth, 10 Va. App. 541, 547, 394 S.E.2d 495, 499 (1990) (citing Leon, 468 U.S. at 918-21); see also Atkins v. Commonwealth, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990).

Under the "good faith" exception, then, "[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be

excluded, even though the affidavit may not have provided the magistrate . . . with probable cause to issue the warrant." Colaw, 32 Va. App. at 810-11, 531 S.E.2d at 33. In this case, although we have determined that the underlying affidavit did not provide the magistrate with probable cause to issue the warrant, there is no evidence that Officer Doughty acted other than in good faith and with a reasonable belief that the warrant was valid. See United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir. 2004) (observing that the officer's "decision to obtain a warrant is prima facie evidence of good faith").

There are, however, four recognized situations in which the good faith exception will not be applied, specifically:

> (1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

Colaw, 32 Va. App. at 811, 531 S.E.2d at 33 (citing Atkins, 9 Va. App. at 464, 389 S.E.2d at 180); see also Robinson v. Commonwealth, 19 Va. App. 642, 647, 453 S.E.2d 916, 918 (1995). Here, Anzualda argues that the third exception to the good faith rule applies, contending that the underlying affidavit was so lacking in indicia of probable cause that a reasonable police officer would not have believed that the warrant was valid.

As discussed above, the magistrate in this case lacked a "substantial basis" for determining that there was probable cause to issue the warrant. The absence of a "substantial basis," however, does not necessarily mean that the affidavit was so entirely lacking of indicia of probable cause that a police officer could not have harbored an objectively reasonable belief in the validity of the warrant. In other words, "no substantial basis" does not automatically equate to "no indicia of probable cause." As aptly noted by the Fourth Circuit,

"Substantial basis" provides the measure for determination of whether probable cause exists in the first instance. If a lack of a substantial basis also prevented application of the Leon objective good faith exception, the exception would be devoid of substance. In fact, Leon states that the third [exception to the good faith rule] prevents a finding of objective faith only when an officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (citation omitted). This is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.

United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (citation omitted). "Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good-faith' reliance." United States v. Washington, 380 F.3d 236, 241 (6th Cir. 2004). Hence, as long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception as long as a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed that the warrant was valid.

Here, we find that the underlying affidavit does contain some indicia of probable cause. The underlying affidavit is not a "bare-bones" affidavit that merely sets forth conclusory allegations with no recitation of the facts supporting those conclusions. See Colaw, 32 Va. App. at 813, 531 S.E.2d at 34 ("A police officer could not reasonably have believed that the warrant was properly issued when it was based on a 'bare bones' affidavit that contained only conclusory assertions by a third-party informant about a future event without supporting facts to constitute probable cause."); see also United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996) ("An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit."). Rather, the underlying affidavit describes with particularity the item sought, the place to be searched, and the transaction that led the police to believe that the item sought would have been found at the place to be searched. See Atkins, 9 Va. App. at 464, 389 S.E.2d at 179

- 12 -

(finding evidence admissible under good faith exception where the affidavit had sufficient indicia of probable cause, specifically, it "contained a detailed description of the nature of the offense, the premises to be searched, the items for which they were searching, and the transaction which led the informant to believe that the drugs would be in this apartment").

As noted above, the underlying affidavit does fail to list the dates on which the described events allegedly occurred. But a reasonable police officer would not necessarily have concluded that the warrant was invalid merely because the affidavit failed to specifically identify the dates on which the described activities occurred. "'In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient.'" Tart, 17 Va. App. at 390, 437 S.E.2d at 222 (quoting Leon, 468 U.S. at 921). Here, a reasonable police officer, after reading the affidavit, would have concluded that the events described occurred within the previous six months. It was not unreasonable for the officer to have also concluded that the pistol, obtained sometime within the preceding six months, could still be in Anzualda's possession. Cf. 2 Wayne R. LaFave, Search and Seizure § 3.7(d) (3d ed. 1996) ("Where the object of the search is a weapon used in [a] crime . . . the inference that the item[] [is] at the offender's residence is especially compelling, at least in those cases where the perpetrator is unaware that . . . [he] has been . . . identif[ied] . . . [by] the police.").[5] Thus, the affidavit's failure to identify the specific dates upon which the described

---

[5] We note that, in Leon itself, the warrant lacked probable cause because the information provided by the informant was six-months old and, therefore, "fatally stale." 468 U.S. at 904-05. Despite the staleness of the information, the Supreme Court concluded that "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." Id. at 926.

Other jurisdictions, after concluding that a warrant was not supported by probable cause because the information contained in the underlying affidavit was stale, have also been willing to admit evidence under the good faith exception. See, e.g., United States v. Beckett, 321 F.3d 26, 33 (1st Cir. 2003) (concluding that good faith exception applied to admit evidence recovered during a search for a murder weapon despite a "six-year lag between the [] murder and the search"); United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars &

- 13 -

events occurred does not, as the dissent asserts, render the affidavit so lacking in probable cause that a reasonable police officer could not have concluded that it was valid. See, e.g., United States v. Anderson, 851 F.2d 727, 729-30 (4th Cir. 1988) (where defendant allegedly possessed a gun suspected to have been used in an unrelated murder, court applied the good faith exception to admit the gun and silencer seized from defendant's residence, noting that even though the court was "troubled by the fact that there is no disclosure in the warrant, or in the affidavit, of either the date of the crime or the date upon which the defendant had offered to sell the pistol to the informants[,] . . . [t]here was no dispute over whether the magistrate or the investigator acted in good faith").

As discussed above, the underlying affidavit also failed to provide a sufficient nexus between the item sought and the premises searched. This does not mean, however, that the affidavit failed to provide *any* nexus between the pistol and Anzualda's residence. The facts listed in the affidavit indicate that Anzualda had obtained a pistol from a murder suspect. The affidavit also indicates that Anzualda resided at the premises to be searched. And, because a reasonable police officer could also infer that Anzualda was keeping the pistol at his home, the affidavit does establish a nexus – however slight – between the item sought and the premises to be searched. See, e.g., United States v. Maneti, 781 F. Supp. 169, 177 (W.D.N.Y. 1991) ("In the

---

Fifty-Seven Cents, 307 F.3d 137, 148 (3d Cir. 2002) (rejecting defendant's "argument that [an] 11-month gap rendered the information in the affidavit so clearly stale that reasonable officers could not have believed that the warrant was valid"); United States v. White, 883 F. Supp. 766, 773-74 (D. Me. 1995) (admitting evidence under good faith exception where the most recent information contained in the warrant was at least two years old, noting that, "[a]lthough the magistrate judge erred in issuing a warrant upon affidavits that did not contain current information[,] . . . such defects are not of the kind which would alert an executing officer" because the officer would not necessarily "be expected to note the particular time frame of the many facts alleged"); see also Bynum, 293 F.3d 192 (three-month gap); United States v. Rugh, 968 F.2d 750 (8th Cir. 1992) (sixteen-month gap); United States v. Kleinebreil, 966 F.2d 945 (5th Cir. 1992) (one-year gap).

- 14 -

case of firearms . . . [it is] reasonable [to] infer[] [that] . . . one would likely keep such evidence [] at home.").

Anzualda, however, argues that our decision in Janis mandates a finding that, because there was an insufficient nexus between the pistol and the premises searched, the affidavit was so lacking in probable cause that a reasonable police officer would have known that the warrant was invalid. In Janis, we declined to apply the good faith exception where the underlying affidavit described certain criminal activities and provided an address to be searched, but failed to indicate *why* that address was being searched (*e.g.*, because one of the suspects resided at or was otherwise connected to that address). See 22 Va. App. at 652, 472 S.E.2d at 653. Because the officer "might just as easily have supplied the magistrate with an address belonging to an unrelated third party," we concluded that "[t]he affidavit gave absolutely no indication that the fruits of criminal activity would probably be found at that location, rendering [the officer's] belief in probable case, based solely on the affidavit, objectively unreasonable." Id. at 652-53, 472 S.E.2d at 653.

In Janis, then, we did not hold that the failure to establish a sufficient nexus between the item sought and the premises to be searched automatically precluded application of the good faith exception. Rather, we held that, where the underlying affidavit failed to provide *any* connection whatsoever between the alleged criminal activity and the premises to be searched, that affidavit was so lacking in indicia of probable cause that a reasonable police officer could not have harbored an objectively reasonable belief as to the validity of the warrant.[6]

---

[6] We further note that United States v. Hove, 848 F.2d 137 (9th Cir. 1988), the case we principally relied upon in Janis, has been similarly distinguished within its own jurisdiction. In United States v. Ramos, 923 F.3d 1346 (9th Cir. 1991), overruled on other grounds by United States v. Ruiz, 257 F.3d 1030 (9th Cir. 2001), for example, the Ninth Circuit held that a warrant was not supported by probable cause because it "failed to show a nexus between the criminal activity and the places to be searched." Id. at 1351. The Ramos court, however, applied the good faith exception to admit the evidence seized pursuant to the warrant. Id. at 1354-55. The

Janis, therefore, is factually distinguishable from the present case. Unlike the affidavit in Janis, which contained *no* information connecting the criminal activity to the premises to be searched, the affidavit here did establish *a* nexus (albeit an insufficient nexus for a finding of probable cause) between the pistol and the premises to be searched. Specifically, the affidavit at issue in this case states that Anzualda was "known to [the confidential informant] as residing at the place to be searched," and additionally indicated that the address to be searched "is occupied by Delio Anzualda and family." The affidavit also indicates that a murder suspect had traded a pistol to Anzualda in exchange for marijuana. It is therefore apparent on the face of the affidavit that the premises were to be searched because Anzualda, the person presumably in possession of the pistol, resided there. Accordingly, the vital link that was missing in Janis is present here: the affidavit clearly connected Anzualda to the pistol and connected Anzualda to the place to be searched.

United States v. Carpenter, 360 F.3d 591 (6th Cir.), cert. denied, 125 S. Ct. 261 (2004), a recent case from the Sixth Circuit, is also instructive. In Carpenter, the court concluded that the magistrate did not have a "substantial basis" for a finding of probable cause because the facts contained in the underlying affidavit "were too vague, generalized, and insubstantial" to establish a sufficient nexus between the place to be searched and the evidence sought. Id. at 595. The court, however, admitted the seized evidence under the good faith exception, reasoning that "the

---

Ramos court distinguished Hove by noting that, "[i]n contrast to the situation presented in Hove, here the affidavit supporting the warrant clearly linked [the premises] to the criminal enterprise observed by the officers," concluding that, "[w]hile the affidavit supporting the [] search warrant may not have been the model of thoroughness, it cannot be said that the document 'd[id] not link this location to the defendant.'" Id. at 1354 (quoting Hove, 848 F.2d at 140) (second alteration in original). Similarly, in United States v. Fowlie, 24 F.3d 1059 (9th Cir. 1994), the Ninth Circuit held that an affidavit met "the minimal requirements of the good faith exception" because it provided a connection between the defendant and the property to be searched. Id. at 1067. The Fowlie court distinguished Hove by noting that the affidavit in Hove "merely listed the address of the residence without . . . giving any facts in support of a conclusion that evidence or contraband would probably be found there." Id.

affidavit was not completely devoid of *any* nexus between the residence and the [item sought]." Id. at 595-96.  Noting that "the affidavit was not totally lacking in facts connecting the residence to the [item sought]," the court concluded that "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity," despite the fact that these facts "were too vague to provide a substantial basis for the determination of probable cause."  Id. at 596.

Similarly, here, the affidavit did provide some facts linking the pistol to the premises to be searched, and these facts "were not so vague as to be conclusory or meaningless."  Id.  Thus, we hold that the affidavit was not so lacking in indicia of probable cause that a reasonable police officer would not have believed that it was valid.  Cf. United States v. Beckett, 321 F.3d 26, 32 (1st Cir. 2003) (holding that, although the affidavit's "support of a nexus between evidence of the murders and [the defendant's] residence is less than overwhelming[,] . . . the affidavit established the nexus element sufficiently to pass muster under Leon"); United States v. Loy, 191 F.3d 360, 368-69 (3d Cir. 1999) (holding that, although the affidavit failed to provide sufficient facts to establish the "requisite nexus between the item to be seized and the place to be searched," the warrant was not "so facially deficient or lacking in indicia of probable cause that a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization").[7]

_____

[7] See also United States v. Washington, 380 F.3d 236, 243 (6th Cir. 2004) (assuming, without deciding, that there was no "sufficient basis" for a finding of probable cause because the affidavit failed to provide a sufficient nexus between the criminal activity observed and the premises searched, but holding that the seized evidence was admissible under the good faith exception because "the affidavit included enough facts with respect to the nexus between the criminal activity and the [premises searched] to overcome the 'so lacking' hurdle"); United States v. Feliz, 20 F. Supp. 2d 97, 105-06 (D. Me. 1998) (applying good faith exception despite finding the underlying affidavit insufficient to establish a nexus between the targeted evidence and the premises searched), aff'd, 182 F.3d 82 (1st Cir. 1999); United States v. Rosario, 918 F. Supp. 524, 529-30, 532 (D.R.I. 1996) (finding that, although the underlying affidavit "lack[ed] any material nexus between [the defendant's] illicit activity and the [premises searched]," the

III. Conclusion

In <u>Leon</u>, the United States Supreme Court recognized a constitutional preference that police officers seek search warrants from neutral and detached magistrates, holding that "suppression of evidence obtained pursuant to a warrant [issued by a magistrate] should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." <u>Leon</u>, 468 U.S. at 918; <u>see also</u> <u>Massachusetts v. Sheppard</u>, 468 U.S. 981, 987-88 (1984). This is not one of those "unusual cases." Rather, "[a]lthough certainly not a thing of beauty, the affidavit is not so lacking in 'indicia of probable cause' as to render objectively reasonable good faith in a warrant issued pursuant to it impossible." <u>United States v. Craig</u>, 861 F.2d 818, 822 (5th Cir. 1988). Because the officer possessed an objectively reasonable belief in the existence of probable cause – namely, that "the fruits of criminal activity would probably be found at" the place to be searched, <u>Janis</u>, 22 Va. App. at 653, 472 S.E.2d at 653 – we hold that the trial court did not err in admitting the seized evidence under the good faith exception to the exclusionary rule. The judgment of the trial court is, therefore, affirmed.

Affirmed.

---

seized evidence was admissible under the good faith exception, reasoning that the affidavit "clearly reflected that [the defendant] was involved with persons associated with illicit narcotics sales" and that the defendant "was involved in at least one verified narcotics sale," rendering the officer's belief in the validity of the warrant objectively reasonable).

Kelsey, J., with whom Bumgardner, J., joins, concurring, in part, dissenting, in part.

I concur in Part II(B) of the majority opinion applying the Leon good-faith immunity to this case. I do not join in Part II(A), which offers an advisory opinion on probable cause principles. Because Leon applies, it renders any further dissection of the warrant logically and legally unnecessary — as Virginia courts, both federal and state,[8] and the great majority of other appellate courts have concluded.[9] "Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the

---

[8] See, e.g., United States v. Perez, 2004 U.S. App. LEXIS 27095 at *4 (4th Cir. 2004) ("Assuming without deciding that the district court correctly concluded the search warrant was invalid for lack of probable cause, we exercise our discretion to proceed directly to the question of good faith."); United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir. 2004) ("Without deciding whether the [specific] warrant is supported by probable cause, we will exercise our discretion and proceed directly to consideration of the Leon exception."); Polston v. Commonwealth, 255 Va. 500, 504, 498 S.E.2d 924, 926 (1998) ("We hold that, regardless of the actual validity of the search warrant, the evidence seized during the search of the defendant's apartment is admissible because of the good faith exception to the exclusionary rule."); Lynch v. Commonwealth, 39 Va. App. 89, 93, 570 S.E.2d 871, 873 (2002) ("As did the trial court, we do not address the validity of the search warrant because the good faith exception applies to the facts of this case."); Moyer v. Commonwealth, 33 Va. App. 8, 16, 531 S.E.2d 580, 584 (2000) (*en banc*) ("Further, assuming without deciding that the search warrant was insufficiently particularized to permit review of the diaries in their entirety, the evidence supported the trial court's finding that the good faith exception to the exclusionary rule applied."); Robinson v. Commonwealth, 19 Va. App. 642, 646, 453 S.E.2d 916, 918 (1995) ("We need not address the correctness of the trial court's initial determination that the warrant was insufficient because we agree with the trial court's finding that the evidence was admissible under the good faith exception to the exclusionary rule.").

[9] See, e.g., United States v. Cherna, 184 F.3d 403, 407 (5th Cir. 1999) ("If the good-faith exception applies, we need not reach the question of probable cause."); United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992) (holding that the court "need not reach the probable cause issue if the good-faith exception applies"); Davidson v. State, 68 S.W.3d 331, 335 (Ark. Ct. App.), cert. denied, 537 U.S. 180 (2002) ("We agree with the State that the good-faith exception would support the denial of suppression in this instance. Thus, we need not address the existence of probable cause to issue the warrant."); State v. Pattie, 42 S.W.3d 825, 827 (Mo. Ct. App. 2001) ("Because we find the State's latter claim of error dispositive, we need not address whether sufficient probable cause existed to issue the search warrant."); Nikrasch v. State, 698 S.W.2d 443, 447 (Tex. Ct. App. 1985) ("We conclude that we need not address the question of whether the affidavit was sufficient to establish probable cause for a search warrant. The record shows that the officers who executed the search warrant acted in objectively reasonable, good faith reliance on a duly issued warrant.").

evidence under the good faith exception of <u>Leon</u> will resolve the matter." <u>United States v. Craig</u>, 861 F.2d 818, 820 (5th Cir. 1988). "This is simply another application of the sound judicial practice of refusing to decide or address issues whose resolution is not necessary to dispose of a case, unless there are compelling reasons to do otherwise." <u>Id.</u> at 821.

That said, I do not deny we have the discretion to reverse the normal sequencing to resolve a "novel question of law" embedded solely in the probable cause analysis. <u>Id.</u> at 820 (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 264 (1983) (White, J., concurring)). In this case, however, I see no legal novelties or precedential conflict in the authorities cited. Nor am I aware of any other "compelling reasons" to go beyond the <u>Leon</u> holding. <u>Id.</u> at 821. I thus think it more consistent with first principles to say no more. "Faithful adherence to the doctrine of judicial restraint provides a fully adequate justification for deciding this case on the best and narrowest ground available." <u>Air Courier Conference v. Am. Postal Workers Union</u>, 498 U.S. 517, 531 (1991) (Stevens, J., concurring).

Benton, J., with whom Fitzpatrick, CJ., Elder, and Frank, JJ., join, dissenting.

As the majority rightly recognizes, the warrant was devoid of probable cause. I agree, therefore, with the majority opinion's holding that the affidavit was insufficient to support a conclusion that a fair probability existed of finding the pistol in the residence. The same facts that support this holding compel a further conclusion, however, that the warrant failed to satisfy the requirements necessary for the good faith exception as described in United States v. Leon, 468 U.S. 897 (1984). Therefore, I dissent.

When the Supreme Court adopted in Leon an "objective reasonableness" standard for the good faith exception to the exclusionary rule, the Court required "officers to have a reasonable knowledge of what the law prohibits." 468 U.S. at 919 n.20. See, e.g., United States v. King, 227 F.3d 732, 753-54 (6th Cir. 2000) (holding that an officer who searched the basement of a duplex did not act with objective reasonableness when the basement area was not mentioned in warrant). In adopting this standard the Supreme Court noted, however, that "it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue." Leon, 468 U.S. at 925. In this case, the resolution of the probable cause issue establishes that the facts in the affidavit provide virtually no basis for believing the pistol would be in the residence.

The Supreme Court held in Leon that an officer does not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" 468 U.S. at 923 (citation omitted). As the Supreme Court noted the magistrate cannot merely ratify "'the bare conclusions of others,'" 468 U.S. at 915 (citation omitted), and, thus, "[n]othing in [Leon] suggests . . . that an officer could obtain a warrant on the basis of a 'bare bones' affidavit." 468 U.S. at 923 n.24. Furthermore,

- 21 -

the Court held that "a warrant may be so facially deficient . . . that the executing officer cannot reasonably presume it to be valid." Id. at 923.

To invoke the good faith exception, the Commonwealth must present evidence to establish the officer's reliance on this defective warrant was based on "objective reasonableness." Id. at 924. In considering these matters, we review *de novo* the trial judge's ultimate conclusion concerning the applicability of the good faith exception to the exclusionary rule. King, 227 F.3d at 753; United States v. Manning, 79 F.3d 212, 221 (1st Cir. 1996).

The record in this case fails to establish that the officers acted with objective reasonableness because the timing nexus surrounding the events is so woefully deficient in this affidavit as to be nonexistent. It is beyond dispute that a reasonably trained officer should be familiar with the warrant requirement of a temporal component connecting the events in the affidavit and the warrant. When, upon an examination of the four corners of the affidavit, the omission of any reference to the time of the critical events is so complete that the nexus between them cannot be reasonably inferred, it cannot be said that an officer's good faith cures the defect. Herrington v. State, 697 S.W.2d 899, 901 (Ark. 1985). See also United States v. Huggins, 733 F.Supp. 445, 449 (D.D.C. 1990) (holding that the Leon good faith exception is inapplicable where the dates of critical events are not disclosed in the affidavit).

The only date or time reference contained in the affidavit is March 17, 2000, the date of the homicides. In the absence of dates regarding the other critical events alleged in the affidavit, the magistrate and the officers made a number of unsupported assumptions based on speculation, and not facts. For example, without specifying any dates, the affidavit relates that an unidentified suspect told a friend, who was an unidentified informant, that he (the suspect) traded a pistol to Anzualda. The affidavit does not disclose when the suspect had the conversation with the informant. Furthermore, the substance of the conversation does not convey any time frame

or other facts which would suggest when the suspect had the conversation. The conversation just as likely occurred a year prior to the date of the affidavit as at any other hypothesized time.

Indeed, the absence of any critical dates and times in the affidavit leaves vague and undisclosed the connection of the "suspect" to the homicides. The affidavit notes only that an individual incarcerated in jail "has become a suspect in the offense in that he has made incriminating statements to at least three persons." If the individual became a suspect merely because he told the informant and others that he traded a pistol to Anzualda, then nothing in the affidavit links the March 17, 2000 killings and the pistol. Only by assuming that the suspect's statements suggested he was the killer could the magistrate conclude the transfer of the pistol occurred after March 17, 2000. Such an assumption, however, is grounded in no fact that is recited in the affidavit. Thus, the affidavit renders speculative whether the suspect was present during the homicides, whether he knew the identity of the killer, or whether he implicated himself as the killer. Most significant, the affidavit renders speculative the date or time when the transfer of the pistol occurred. The omission of dates or times renders any connections between the alleged critical events indiscernible from the face of the affidavit and, thus, negates any conclusion that the officials acted with objective reasonableness.

When the staleness or timing nexus is viewed in relation to the nature of the other activity that is alleged in the warrant, it is clear both that the affidavit was facially "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and that the warrant was so facially deficient that the officer could not have reasonably believed it was valid. In the absence of critical dates and times that would establish the timing nexus, the affidavit required both the magistrate and the officer to speculate as to a nexus between the homicides and the pistol that was the object of the search warrant. The absence of a date or indication of timing nexus bears on these omissions because no reasonable inference can be drawn by a magistrate or

reasonably trained officer concerning the relationship of the pistol to the events giving rise to the allegation of a need to obtain the warrant.

Specifically, the lack of any dates or times in the affidavit led to three unsupportable assumptions. First, the lack of a date made it purely speculative when the suspect traded the pistol - - whether the suspect transferred the pistol before or after the homicides. Thus, there was no basis to conclude the pistol was used to commit the homicide. Second, the affidavit does not contain even a suggestion of when, if ever, the pistol was seen in the residence or even where the trade occurred. Thus, the information communicated by the suspect does not disclose a reasonable probability that the pistol the suspect traded would be at the residence on September 15, the date the warrant was issued and executed. Finally, the affidavit's statement of material facts does not even disclose whether the pistol the suspect traded was a "9 millimeter" firearm or was believed to be a weapon capable of discharging "9 millimeter rounds." This deficiency is directly connected to the affidavit's failure to provide any critical dates or times because, by failing to allege that the pistol was traded at a time so as to be connected with the homicide, no inferences could be drawn from the four corners of the affidavit about the pistol's connections to the event.[10]

The omission of critical dates simply does not permit any objectively reasonable officer or magistrate to draw inferences about the recency of the events and, therefore, the nexus requirement became merely a matter of guesswork and supposition. Simply put, the absence of times and dates renders these critical events mere speculative assumptions. These leaps of logic

---

[10] In addition to failing the nexus requirement, this third assumption also graphically demonstrates the warrant's failure to satisfy both the Fourth Amendment and the statutory warrant requirement of specificity. See Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971) (holding that the Fourth Amendment "requir[es] a 'particular description' of the thing to be seized"). See also Code § 19.2-53; Derr v. Commonwealth, 6 Va. App. 215, 221, 368 S.E.2d 916, 919 (1988) (holding that a seizable item must be "evidence of or an instrumentality of a crime").

negate any suggestion of "objective reasonableness" and are based upon suppositions that no reasonable officer or magistrate could make. For these reasons, the "warrant [was] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence as entirely unreasonable.'" Leon, 468 U.S. at 923 (citation omitted). I would hold, therefore, that the circuit court erred in refusing to suppress the evidence.

Tuesday                    23rd

March, 2004.

Delio Anzualda, Jr.                                                    Appellant,

 against            Record No. 1719-02-1
                    Circuit Court Nos. CR00000171-00 through CR00000171-02

Commonwealth of Virginia,                                              Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner,
Frank, Humphreys, Clements, Felton and Kelsey


On March 8, 2004 came the appellee, by the Attorney General of Virginia, and filed a petition

praying that the Court set aside the judgment rendered herein on February 24, 2004, and grant a

rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered

herein on February 24, 2004 is stayed pending the decision of the Court *en banc*, and the appeal is

reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file with the clerk of this Court twelve

additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


DELIO ANZUALDA, JR.
                                                    OPINION BY
v.        Record No. 1719-02-1            JUDGE JAMES W. BENTON, JR.
                                                 FEBRUARY 24, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
Glen A. Tyler, Judge

William P. Robinson, Jr. (Robinson, Neeley & Anderson, on brief),
for appellant.

Margaret Reed, Assistant Attorney General (Jerry W. Kilgore,
Attorney General; Amy Hay Schwab, Assistant Attorney General, on
brief), for appellee.


The sole issue granted for review is whether the circuit court judge erred when he denied

a motion to suppress evidence seized pursuant to a search warrant.  Delio Anzualda, Jr. contends

that the search warrant was not supported by probable cause and further that the warrant was

deficient under United States v. Leon, 468 U.S. 897 (1984).  We agree, and we reverse the

conviction.

I.

The evidence at the suppression hearing proved that on September 15, 2000, a deputy

sheriff from the Northampton County Sheriff's office obtained a warrant to search the home of

Delio Anzualda, Jr.  The affidavit supporting the search warrant contained the following recital

of the "material facts constituting probable cause":

On March 17, 2000, Carlos Tolentito and Hildeberto
Velasco were shot to death with 9 millimeter rounds on
Occohannock Neck Road.  An individual incarcerated in the

> Northampton County Jail has become a suspect in the offense in that he has made incriminating statements to at least three persons. An intimate friend of the suspect has informed the undersigned that the suspect informed the intimate friend that he had traded a pistol to an individual known as "Cowboy" for marijuana, "Cowboy" being known to her as residing at the place to be searched. The undersigned has personal knowledge that "Cowboy" is Delio Anzualda.

A separate paragraph in the affidavit identified the "thing to be searched for" as a "9 millimeter pistol and/or ammunition."

During the search of the residence, the deputy sheriffs discovered cocaine, marijuana, two rifles, and a shotgun. No pistol was listed among the items seized. A grand jury indicted Anzualda on several charges including possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and possession of a firearm while possessing cocaine. At a hearing on a motion to suppress the evidence prior to trial on these offenses, Anzualda's attorney argued the affidavit was defective because it "fail[ed] to set sufficient facts on its face to cause a reasonably detached magistrate to believe that the subject matter of the search for a pistol was at [Anzualda's] home." He further argued that the affidavit failed to indicate when the gun was traded, that the time between the affidavit and the events spanned months, and that the affidavit lacked any nexus between the information given by the informant and the place to be searched.

In response, the prosecutor argued as follows:

> Well, Your Honor, the nexus between the item to be searched for and the house to be searched is the fact that the defendant, to whom the gun was traded, lives in the house to be searched. To me it's pretty simple and pretty straightforward. I would also say . . . that United States versus Leon says that the policeman relies in good faith on a -- a search warrant issued by a detached magistrate, which is surely the case in this -- that it's not going to be suppressed anyway unless it's so ridiculous on its face that the policeman couldn't rely on it; and this surely is not that.

The circuit court judge agreed with the prosecutor's argument and denied the motion to suppress. Later, another judge convicted Delio Anzualda, Jr., on his conditional guilty plea, of

- 2 -

possessing a firearm while possessing cocaine, possessing cocaine with intent to distribute in violation of Code § 18.2-248, and "possession of cocaine" in violation of "[Code §] 18.2-248.1."[1]

## II.

The principle is well established that a magistrate may issue a search warrant only upon allegations of "facts so closely related to the time of issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210 (1932). Applying this principle, the Supreme Court of Virginia has held that a search warrant "affidavit can be sustained only if the allegations pertaining to [the critical event] were sufficient to show the probability that the . . . conduct continued up to the time of the issuance of the search warrant." Stovall v. Commonwealth, 213 Va. 67, 70, 189 S.E.2d 353, 356 (1972).

The timing nexus is particularly deficient in this affidavit. Without specifying any dates, the affidavit relates that an unidentified suspect told a friend, who was an unidentified informant, that he (the suspect) traded a pistol to Anzualda. The affidavit does not disclose when the suspect had the conversation with the informant. Furthermore, the substance of the conversation does not convey any time frame or other facts which would suggest when the suspect had the conversation. Indeed, the conversation just as likely could have occurred a year prior to the date of the affidavit as at any other hypothesized time.

Likewise, the affidavit does not disclose when the suspect traded the pistol. It does not disclose whether the suspect transferred the pistol before or after the homicides. Furthermore, the affidavit does not assert the pistol was ever seen in the residence or even where the trade occurred. Indeed, the affidavit's statement of material facts does not even disclose whether the

---

[1] The conviction order erroneously references a conviction for possession of cocaine in violation of Code § 18.2-248.1. That statute relates to possession of marijuana with the intent to distribute, which was the charge contained in the indictment.

- 3 -

pistol the suspect traded was a "9 millimeter" firearm or was believed to be a weapon capable of discharging "9 millimeter rounds." Thus, the information communicated by the suspect does not disclose a reasonable probability that the pistol the suspect traded would be at the residence on September 15, when the warrant was issued and executed. The affidavit also does not allege that the traded pistol was connected with the homicide. Code § 19.2-53; Derr v. Commonwealth, 6 Va. App. 215, 221, 368 S.E.2d 916, 919 (1988) (a seizable item must be "evidence of or an instrumentality of a crime"). As the Supreme Court noted in Stovall, "there should have been set forth some factual allegations which, when added to the earlier information, would have led the reasonable mind to believe that criminal conduct probably continued until the time the search warrant issued." 213 Va. at 71, 189 S.E.2d at 356.

The only date or time reference contained in the affidavit is March 17, 2000, the date of the homicides. Significantly, however, the affidavit leaves vague and undisclosed the connection of the "suspect" to the homicides. It notes only that a individual incarcerated in jail "has become a suspect in the offense in that he has made incriminating statements to at least three persons." By leaving unstated whether the suspect's statements suggest that he was present during the homicides or that he knew the identity of the killer or that he implicated himself as the killer, the affidavit renders speculative when the transfer of the pistol occurred. Indeed, if the individual has become a suspect merely because he told the informant and others that he traded a pistol to Anzualda, then probable cause is non-existent because nothing in the affidavit links the March 17, 2000 killings and the pistol. Only by assuming that the suspect's statements suggested he was the killer could the magistrate conclude the transfer of the pistol occurred after March 17, 2000. Such an assumption, however, is grounded in no fact that is recited in the affidavit. For these reasons, we hold that the affidavit was defectively vague and was insufficient to establish probable cause.

III.

The Commonwealth contends that we should nevertheless affirm the refusal to suppress the evidence because of the good faith exception announced in United States v. Leon, 468 U.S. 897 (1984). We disagree.

"Under the good faith exception evidence illegally seized is admissible if the officer conducting the search reasonably relied on a search warrant issued by a detached and neutral magistrate." Atkins v. Commonwealth, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990). Applying Leon, we held in Janis v. Commonwealth, 22 Va. App. 646, 472 S.E.2d 649 (1996), aff'd on reh'g en banc, 23 Va. App. 696, 479 S.E.2d 534 (1996), that the good faith exception is not available in the following instances:

> "(1) [W]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid."

22 Va. at 653, 472 S.E.2d at 653 (citation omitted). As the Supreme Court noted in Leon, the magistrate cannot merely ratify "'the bare conclusions of others,'" 468 U.S. at 915 (citation omitted), and, thus, "[n]othing in [Leon] suggests . . . that an officer could obtain a warrant on the basis of a 'bare bones' affidavit." Id. at 923 n.24.

As we have explained in Part II, the affidavit required the magistrate to speculate as to a nexus between the homicides and the pistol that was the object of the search warrant. The affidavit contained no claim that the pistol alleged to have been traded to Anzualda was the weapon used to commit the homicides or even would discharge the same caliber of ammunition as the weapon used in the homicides. In addition, the affidavit contained not even a suggestion that the pistol was traded inside the residence or that the pistol was seen at the residence at any

- 5 -

time prior to the search.  In short, the "warrant [was] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence as entirely unreasonable.'"  Id. at 923 (citation omitted).

For these reasons, we hold the circuit court judge erred in refusing to suppress the evidence.  Accordingly, we reverse the conviction and remand for a new trial.

<u>Reversed and remanded</u>.

Humphreys, J., dissenting.

Even assuming the affidavit here was insufficient, and the related search warrant invalid, I would affirm the trial court's ruling pursuant to the good faith exception to the warrant requirement established in United States v. Leon, 468 U.S. 897 (1984). I, thus, do not join the majority in its analysis or judgment.

In Leon, the United States Supreme Court recognized a constitutional preference that police officers seek search warrants from neutral and detached magistrates and held that "suppression of evidence obtained pursuant to a warrant [issued by a magistrate] should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918; see also Massachusetts v. Sheppard, 468 U.S. 981, 987-88 (1984).

> The Supreme Court also stated [in that case] that "the exclusionary rule is designed to deter *police misconduct ....*" Leon, 468 U.S. at 916. This deterrent is not present when a police officer, acting in *objective good faith*, obtains a search warrant from a magistrate and conducts a search within the scope of the warrant. Derr v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991). [In Virginia,] [w]e have embraced and applied the good faith exception to the exclusionary rule. Id. at 422-23, 410 S.E.2d at 667; McCary v. Commonwealth, 228 Va. 219, 232, 321 S.E.2d 637, 644 (1984).

Polston v. Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925-26 (1998) (emphases added). Indeed, we have accepted the United States Supreme Court's implicit recognition in Leon, that police officers are not lawyers. Thus, we have recognized that, "'[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.'" Janis v. Commonwealth, 22 Va. App. 646, 653, 472 S.E.2d 649, 653 (1996) (quoting Leon, 468 U.S. at 921).

As the majority notes, however, the exclusionary rule may still be applied in four instances. Specifically,

> (1) [W]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

Miles v. Commonwealth, 13 Va. App. 64, 71, 408 S.E.2d 602, 606 (1991) (quoting Atkins v. Commonwealth, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990)).

Giving short shrift to the purpose behind the Leon good faith exception, the majority relies upon the third exception in concluding that because 1) "the affidavit required the magistrate to speculate as to a nexus between the homicides and the pistol that was the object of the search warrant," and 2) "the affidavit contained not even a suggestion that the pistol was traded inside the residence or that the pistol was seen at the residence at any time prior to the search," the warrant was "so lacking in indicia or probable cause as to render [the officers'] official belief in its existence as entirely unreasonable." (Citations omitted). I disagree with the majority's analysis and conclusion as it pertains to circumstances presented in this appeal.

First, the record demonstrates that Anzualda did not argue below that the affidavit failed to establish a nexus between the homicides and the "pistol" at issue. In fact, Anzualda did not raise this contention as a Question Presented on appeal.[2] Instead, he merely refers to this issue in

---

[2] Anzualda does raise as a Question Presented, a general issue stated as: "Was the search of [Anzualda's] residence violative of the Fourth and Fourteenth Amendments of the Constitution of the United States and Article 1, Section 10, of the Constitution of Virginia?" Nevertheless, Anzualda does not refer to this Question Presented in the body of his brief. Nor does he present any authority in support of this particular issue. Furthermore, Anzualda fails to state any relationship between this broad issue and its relationship to his two contentions concerning the sufficiency of the underlying affidavit. Thus, I would not consider this issue on appeal. See Rule 5A:20(e); see also Thomas v. Commonwealth, 38 Va. App. 319, 321 n.1, 563 S.E.2d 406, 407 n.1 (2002) (noting that mere statements, unsupported by "argument, authority or citations to the record" do not merit appellate consideration); Dickerson v. Commonwealth, 36

- 8 -

one sentence in the body of his argument in his brief on appeal.  Accordingly, I would find that Anzualda has failed to preserve this issue for purposes of appeal.  See Rule 5A:18; Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900 (1992) (noting the requirements of Rule 5A:18 apply equally to constitutional claims); see also 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals.").

Second, unlike the majority, I would limit any appellate consideration to those issues properly raised and briefed by Anzualda.  Namely, whether "the search warrant affidavit [was] insufficient on its face in that it failed to set forth sufficient facts to conclude that the object of the search would be found on the premises to be searched," and whether "the affidavit for the search warrant [was] stale, the information in support thereof, having been communicated in March, 2000, while the affidavit for the search warrant was sworn to in September, 2000[.]"

As to Anzualda's first contention, the affidavit stated that "an intimate friend" of the suspect had informed the officer who swore to the affidavit, that the suspect said he had traded a pistol to an individual known as "Cowboy."[3]  The affidavit further stated that the "intimate friend" informant advised the officer that "Cowboy" resided at "the place to be searched."  In addition, the affidavit stated that the officer personally knew "Cowboy" to be Anzualda.  Thus, the affidavit clearly provided a basis upon which a reasonable officer and/or magistrate could have inferred that the pistol, "traded" to Anzualda (a.k.a. "Cowboy"), could be found at Anzualda's residence or "any other structures or containers" located on that particular property.

---

Va. App. 8, 15, 548 S.E.2d 230, 234 (2001); Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001); Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

[3] Anzualda has raised no issue concerning the reliability of the informant, nor the officer's or magistrate's reliance upon that information, as contained in the affidavit.

See Williams v. Commonwealth, 4 Va. App. 53, 68, 354 S.E.2d 79, 87 (1987) (noting that, in issuing a warrant and making a probable cause determination, a magistrate may draw reasonable inferences from the material supplied to him).

Indeed, this case is unlike the case in Janis, where we found the Leon good faith exception did not apply. 22 Va. App. at 654, 472 S.E.2d at 654. In Janis, we determined that, because the affidavit failed to provide a nexus between marijuana being grown in a field in Dinwiddie County and the defendant's residence in Hopewell -- the place to be searched -- "the magistrate who issued the warrant could not reasonably have concluded that contraband would probably be found at the premises to be searched." 22 Va. App. at 652, 472 S.E.2d at 653. The affidavit "gave absolutely no indication that the fruits of criminal activity would probably be found at" the place to be searched. Id. at 653, 472 S.E.2d at 653. Indeed, the affidavit did not provide the address to be searched, nor did it in any way link the residence at that address to the defendant. Id. Accordingly, we held that the officers' belief in probable cause, based solely on the affidavit, was objectively unreasonable. Id.

Here, the affidavit upon which the warrant was based clearly linked Anzualda to the pistol and linked Anzualda to the place to be searched. For this reason, I would find that, as in Leon, the affidavit here "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." Leon, 468 U.S. at 926. Thus, I would conclude that the officer obtaining the warrant and the officers conducting the search "harbored an objectively reasonable belief in the existence of probable cause," Corey v. Commonwealth, 8 Va. App. 281, 289, 381 S.E.2d 19, 23 (1989) (quoting Leon, 468 U.S. at 923), as it pertained to the nexus between the pistol and Anzualda's residence. See Miles, 13 Va. App. at 72, 408 S.E.2d at 607 (noting that we need decide only whether the officer could *reasonably* presume the search warrant to be valid).

As to Anzualda's final contention, I would find that the officer providing the affidavit possessed an objectively reasonable belief that probable cause existed at the time the warrant was obtained, and that the "information in support of the warrant" was not stale.[4]

The Supreme Court of Virginia has explicitly held that "[t]here is no fixed standard or formula establishing a maximum allowable interval between the date of events recited in an affidavit and the date of a search warrant." Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000). "Instead, a warrant will be tested for 'staleness' by considering whether the facts alleged in the warrant provided probable cause to believe, at the time the search actually was conducted, that the search conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity." Id.

Here, the affidavit (signed on September 15, 2000) was, without question, inartfully drafted. Indeed, the majority correctly notes that the affidavit failed to state when the pistol was traded. It also failed to state when the officer swearing to the affidavit received the information upon which it was based. Nevertheless, the affidavit did state that the homicides at issue took place on March 17, 2000 and were committed with a firearm shooting 9 millimeter rounds. It further stated that an individual in prison had incriminated himself in the homicides, and that the individual had traded a pistol to Anzualda in exchange for marijuana. The affidavit listed the item "to be searched for" as a "9 millimeter pistol and/or ammunition." Because the affidavit specifically listed the date of the homicides as March 17, 2000, it was not unreasonable for the officer to have concluded that the pistol, obtained sometime within the preceding six months, could still be located in Anzualda's possession.

> "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts

---

[4] As stated above, Anzualda has failed to preserve any issue relating to whether the affidavit provided an appropriate nexus between the pistol and the March 17, 2000 homicides. Accordingly, I would not address this issue. See Rule 5A:18.

- 11 -

supplied and the issuance of the affidavit." <u>United States v. Johnson</u>, 461 F.2d 285, 287 (10th Cir. 1972). Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized. <u>Id.</u>

<u>Perez v. Commonwealth</u>, 25 Va. App. 137, 141-42, 486 S.E.2d 578, 581 (1997) (quoting <u>United States v. McCall</u>, 740 F.2d 1331, 1336 (4th Cir. 1984)); <u>see also</u> <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.").

Considering the totality of the circumstances, including the nature of the property to be seized, I would find that the officer possessed an objectively reasonable belief in the existence of probable cause -- namely, that "the fruits of criminal activity would probably be found at" the place to be searched -- at the time the affidavit was sworn to and the warrant issued. <u>Janis</u>, 22 Va. App. at 653, 472 S.E.2d at 653; <u>see also</u> <u>Leon</u>, 468 U.S. at 926.

For these reasons, I would find that the <u>Leon</u> "good faith" exception applies to this case and I would, thus, affirm the judgment of the trial court.