COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


CLARENCE JAY LYNCH
                                          OPINION BY
v.    Record No. 1874-01-3     JUDGE RUDOLPH BUMGARDNER, III
                                        OCTOBER 15, 2002
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Robert P. Doherty, Jr., Judge

             Melissa W. Friedman (Anthony F. Anderson, on
             brief), for appellant.

             Marla Graff Decker, Assistant Attorney
             General (Jerry W. Kilgore, Attorney General,
             on brief), for appellee.


     A jury convicted Clarence Jay Lynch of manufacturing

marijuana not for personal use.  He assigns two errors:  (1) the

admission of evidence seized pursuant to a search warrant, and

(2) the failure of the trial judge to recuse himself.  Finding

no error, we affirm.

     On May 17, 1999, a concerned citizen notified police the

defendant was growing marijuana in his residence at 925 Westside

Boulevard N.W.  The citizen had seen 30 to 50 marijuana plants

and grow lights in the residence as recently as "06[sic]0199."

On July 28, 1999, a second concerned citizen notified police the

defendant was growing and selling marijuana from his residence.

He reported the defendant "had numerous firearms in the

residence and threatened to use them if he came in contact with the police." The police verified the defendant's identity and address from the city directory and Department of Motor Vehicles records. Police conducted a power consumption analysis from the electric utility's records for the defendant's residence. Over the previous six-month period, the defendant consumed three times more power than neighbors, who resided in similar houses. The defendant's power consumption coincided with the cultivating and harvesting cycle of marijuana. Additionally, the police twice used a thermal imaging device and detected an extreme heat source at the rear of the residence.

The investigating detective recited those details in an affidavit for a search warrant of the defendant's residence that he prepared on September 9, 1999. A magistrate issued the warrant that evening, and police officers executed it shortly thereafter. The defendant moved to suppress the marijuana plants, related evidence, and incriminating statements obtained during the search.

The trial court held the evidence was admissible under the good faith exception of United States v. Leon, 468 U.S. 897 (1984), even assuming the affidavit was deficient or the warrant was invalid. The trial judge ruled: the magistrate did not abandon his judicial role; the police officers were not dishonest or reckless in preparing the affidavit and did not mislead the magistrate; the warrant is not so lacking in

-

probable cause or the required information as to render belief in its existence unreasonable; and the warrant was not so facially deficient that the executing officers could not reasonably assume it was valid.

On appeal, the defendant contends the trial court erred in applying the good faith exception to the exclusionary rule. He argues the thermal imaging surveillance of his residence was unconstitutional[1] and the results must be excised when assessing the validity of the search. He concludes that without the results of the thermal imaging the affidavit was facially deficient and reliance on it was unreasonable.

As did the trial court, we do not address the validity of the search warrant because the good faith exception applies to the facts of this case. The good faith exception is not available in four situations:

> (1) [W]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

---

[1] Kyllo v. United States, 533 U.S. 27 (2001), ruled thermal imagery was an unconstitutional search. The Supreme Court rendered its decision after the defendant's suppression hearing and trial, but before sentencing.

*Adkins v. Commonwealth*, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990) (citing *Leon*, 468 U.S. at 923). Only the third or fourth exceptions could apply in this case, but neither does.

The affidavit stated that two concerned citizens observed the marijuana plants inside the defendant's home. The police corroborated that the defendant existed and resided at the address provided. A detailed power consumption analysis of the residence revealed the defendant used an unusual amount of power, which correlated with the marijuana cultivation cycle. The investigation tended to corroborate the information provided by the citizen informants. Even excluding the information derived from thermal imaging, the affidavit did not lack indicia of probable cause. The third exception to the good faith doctrine does not apply to this case.

At the time the magistrate issued the warrant, the Supreme Court had not decided *Kyllo v. United States*, 533 U.S. 27 (2001). Indeed, every United States Circuit Court that had addressed the issue had ruled that the use of the thermal imagery was permissible. *Id.* at 46 n.4 (Stevens, J., dissenting). The magistrate and officers were entitled to rely on the results of that surveillance technique when determining probable cause for the search warrant. They adhered to established law, and requiring them to anticipate the constitutional standard announced in *Kyllo* is not reasonable.

-

When the officers conducted their search, they acted under authority of an apparently valid warrant. "[A]n officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Leon, 468 U.S. at 921. Though partially based on information derived from thermal imaging, the warrant was not so facially deficient that the officers were unreasonable in assuming it was valid. The fourth exception to the good faith doctrine does not apply to this case.

"The purpose of the exclusionary rule historically was to deter police misconduct rather than to punish the errors of magistrates. This deterrent is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant." Derr v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991) (citation omitted). None of the evils sought to be avoided by the exclusionary rule are present in this case. The trial court did not err in denying the defendant's motion to suppress the evidence obtained from execution of this search warrant.

Next, we consider whether the trial judge erred by refusing to recuse himself. Judge Apgar presided at the suppression hearing. By the time the trial began, he had been assigned to a different court within the circuit. Judge Apgar denied a motion to continue the case until he could preside. Judge Doherty conducted the trial during which the defendant represented

-

himself.  Judge Doherty declared a mistrial and found the defendant in contempt for misconduct that disrupted his trial. Judge Doherty denied a motion to have Judge Apgar preside at the retrial.

The defendant contends Code § 17.1-503[2] mandates that the judge who hears a preliminary matter hear the entire case.  The statute forbids a rule of the Supreme Court that would preclude a judge from hearing a case to its conclusion.  It simply does not read as the defendant contends.

The defendant contends the trial judge had a conflict of interest because he was a former law partner of the defendant's first attorney whom the defendant discharged.  He maintains the judge was biased because he held the defendant in contempt during the first trial.  After a full hearing on the motion to

_____

[2] Code § 17.1-503 provides in part:

> No rule shall hereafter be promulgated . . . which would avoid or preclude the judge before whom an accused is arraigned in criminal cases from hearing all aspects of the case on its merits, or to avoid or preclude any judge in any case who has heard any part of the case on its merits, from hearing the case to its conclusion. However, another judge may hear portions of a case where a judge is required to disqualify himself, in cases in which a mistrial is declared, or in cases which have been reversed on appeal, or in the event of sickness, disability or vacation of the judge.

-

recuse, the trial judge stated he did not have "any sort of conflict" and denied the motion.

Whether a judge should recuse in a given case rests within the exercise of reasonable discretion. Deahl v. Winchester Dep't Soc. Servs., 224 Va. 664, 672, 299 S.E.2d 863, 867 (1983). The judge's decision will not be reversed absent a showing that he abused his discretion. In Stockton v. Commonwealth, 227 Va. 124, 141, 314 S.E.2d 371, 382 (1984), the trial judge did not abuse his discretion in not recusing after the defendant had cursed him during the previous trial. In Justus v. Commonwealth, 222 Va. 667, 673, 283 S.E.2d 905, 908 (1981), the trial judge did not abuse his discretion when he retried the defendant after his first capital murder conviction was reversed.

The defendant provided no support for his claim of conflict and bias, and none appears from the record. The record provides no indication that the trial judge abused his discretion in not recusing himself. The trial court did not err in denying the motion to do so.

For the reasons stated, we affirm the conviction.

Affirmed.

-