COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Alston and O'Brien
Argued at Alexandria, Virginia

**PUBLISHED**

TOBIAS OGBANNA REED

v.      Record No. 1305-15-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROSSIE D. ALSTON, JR.
OCTOBER 16, 2018

UPON REMAND FROM THE SUPREME COURT OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Marvin D. Miller (Kelly R. Green; Bret D. Lee; Law Offices of
Marvin D. Miller, on briefs), for appellant.

Victoria L. Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General; Victoria N. Pearson, Deputy Attorney General;
Toby J. Heytens, Solicitor General; Matthew R. McGuire,
Principal Deputy Solicitor General, on brief), for appellee.

Tobias Ogbanna Reed ("appellant") was convicted of distribution of cocaine, and a

portion of his cell phone records was admitted at trial. Appellant timely appealed to this Court,

we affirmed his conviction, 2016 Va. App. LEXIS 233 (Va. Ct. App. Aug. 30, 2016), and the

Supreme Court of Virginia refused to consider the case. Having exhausted his state court

appeals, appellant filed a petition for a writ of *certiorari* with the Supreme Court of the United

States and asked that his petition be stayed until the resolution of Carpenter v. United States, 138

S. Ct. 2206 (2018). The Supreme Court granted that request, and after issuing the Carpenter

decision, the Supreme Court vacated the judgment and remanded the case to the Supreme Court

of Virginia, 138 S. Ct. 2702 (2018), who then remanded the case to the Court of Appeals of Virginia for further consideration in light of Carpenter.

We now consider appellant's arguments.

BACKGROUND

In 2011, appellant began working as a confidential informant for Detective Benjamin George ("George") of the Alexandria Police Department, with the understanding that appellant would not engage in any drug transactions other than those identified and authorized by George. On July 18, 2012, Detective John East ("East") was working undercover and used Fernando Payne ("Payne") to purchase drugs from a "second source." Payne called the "second source" and then handed his cell phone to East, telling him that if it rang and "it says 'Tobias' that's my man. Pick up and tell him I'm coming." After Payne walked off to wait for the "second source," Payne's phone rang multiple times and the name "Tobias" appeared as the caller.

George observed the transaction as a part of East's "cover team." While Payne waited for the "second source" to arrive, George noticed a silver Ford Escape drive up, which he recognized. He observed appellant driving the vehicle. George witnessed Payne get into the Ford Escape, exit a few minutes later, and then walk back to East's vehicle. Payne was in possession of cocaine when he returned to East's vehicle. At that point, George realized that appellant was the "second source," but he had not authorized him to participate in the transaction. In his testimony, George stated he was "one hundred percent" sure that it was appellant in the vehicle with Payne.

On August 3, 2012, East applied for and obtained an *ex parte* court order pursuant to the Stored Communications Act ("SCA") and its Virginia equivalent, Code § 19.2-70.3(B). The initial order, sent by fax to Verizon in New Jersey, requested approximately five months of

appellant's historical cell site location information ("CSLI").[1] In the application, East primarily relied upon George's identification of appellant, Payne's statement when he handed his cell phone to East, and the subsequent analysis of Payne's phone, which showed that the number associated with "Tobias" was 571-329-7478, a number George recognized as used by appellant.

About two weeks later, an arrest warrant was issued for appellant on the charge of distribution of cocaine. The very next day, appellant was sentenced in federal court to 24 months of incarceration after violating the conditions of his supervised release on an unrelated matter. Appellant did not come into Alexandria custody on the state charge until June 5, 2014, and he was indicted on the distribution of cocaine charge in July 2014.

The parties scheduled a trial for March 2, 2015. In January 2015, the Commonwealth's attorney requested the issuance of a subpoena *duces tecum* to the Verizon custodian of records, seeking the CSLI for appellant's phone number. The Commonwealth initially requested the CSLI between July and August 2012, but the trial court narrowed the subpoena's scope to two days before and after July 18, 2012, the date of the transaction. Appellant attempted to suppress the information in the CSLI,[2] asserting that the acquisition of his CSLI violated his constitutional rights. Finding no constitutional issue, the trial court denied the motion to suppress.

At the bench trial, East and George testified about the events that occurred on July 18, 2012 and their interactions with appellant and Payne. The custodian of records from Verizon

---

[1] CSLI is data that is logged when a cell phone connects with nearby cell towers – the wireless provider can use that data to "triangulate" the location of a cell phone to within 50 meters. Some wireless providers store this information for up to five years, allowing the government to "travel back in time to retrace a person's whereabouts." Carpenter, 138 S. Ct. at 2218. Thus, an individual who has continuously used a cell phone "has effectively been tailed every moment of every day for five years." Id.

[2] Appellant's motion also argued that the subpoena *duces tecum* should be quashed because it had been illegally served to an entity outside of the Commonwealth. That issue is not before this Court on remand.

testified about the CSLI for the phone number 571-329-7478, which George had identified as the number that he called whenever he intended to reach appellant. Specifically, the custodian testified about which towers the phone had "pinged" off of and the towers through which the calls had been routed on July 18, 2012. The custodian had also produced a map of the towers which showed that they were in the general area where the drug transaction occurred.

George also testified that appellant made 250 hours of phone calls from the Alexandria jail and that he listened to all of them. On numerous calls, appellant referenced letters that he had mailed to various acquaintances. Appellant's letters were later intercepted, and the Commonwealth admitted one at trial, which read:

> They're going to test the drugs that they had gotten from [Payne] to see if my DNA fingerprints are on the plastic bag of the drugs. For real, for real, I ain't even worrying in this situation because it is not going to show jack shit after two years done gone past . . . all I can say is keep me in your prayers on this one. Now I know that my prints done got smeared off after [Payne] handled the package. We will see.
>
> . . . .
>
> I have good faith that the fingerprints will come back negative. But if the package comes back positive with my fingerprints in which I know it is not, but if it does [then] I will call everyone that called my lawyer to help me out as an alibi to back away because they found evidence on me.

The trial court found appellant guilty of distribution of cocaine, stating that it based its ruling on the detectives' testimony, appellant's appearance within minutes of Payne contacting him, and the letter written by appellant. The trial court also referenced the CSLI, stating that "the [cell] phone records . . . corroborate the location of the phone numbers used by Fernando Payne and [appellant]." Appellant received an active penitentiary sentence of 10 years.

ANALYSIS

In Carpenter v. United States, the Supreme Court of the United States held that a "search" occurs when the government "accesses historical cell phone records [CSLI] that provide a comprehensive chronicle of the user's past movements." Carpenter, 138 S. Ct. at 2211. Carpenter specifically addressed the constitutionality regarding the acquisition of and use at trial of 127 days of CSLI through an *ex parte* order issued under the SCA. See 18 U.S.C. § 2703(d) (providing that a court may issue an order to a cell phone company when there is a belief that records are "relevant and material to an ongoing investigation"). Code § 19.2-70.3(B) contains this exact language.

The Supreme Court determined that the language in § 2703(d) allowed law enforcement officers to obtain CSLI based upon a standard that "falls well short of the probable cause required for a warrant." Carpenter, 138 S. Ct. at 2221. Due to the voluminous and potentially detailed constellation of personal information that could be revealed by such an order, the Court held that § 2703(d) of the SCA "is not a permissible mechanism for accessing [CSLI]." Id. at 2221; see also id. at 2223 (noting "the deeply revealing nature of CSLI, [and] its depth, breadth, and comprehensive reach").

Appellant asserts that Carpenter requires reversal of his conviction because the Commonwealth obtained five months of his CSLI from Verizon pursuant to an *ex parte* order issued under Code § 19.2-70.3(B) and § 2703(d) of the SCA. Carpenter might well suggest that the initial acquisition of five months of CSLI is *ipso facto* an unconstitutional search. However, this case is not resolved as simply or as straightforwardly as appellant would suggest.

The Detectives Acted in Good Faith in 2012[3]

The good faith exception to the exclusionary rule is a well-rooted component of our nation's jurisprudence. "The exclusionary rule's 'sole purpose . . . is to deter future Fourth Amendment violations.'" United States v. Chavez, 894 F.3d 593, 608 (4th Cir. 2018) (quoting Davis v. United States, 564 U.S. 229, 236-37 (2011)). "The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" United States v. Leon, 468 U.S. 897, 906 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). "[W]hen investigators 'act with an objectively reasonable good-faith belief that their conduct is lawful,' the exclusionary rule will not apply." Chavez, 894 F.3d at 608 (quoting Leon, 468 U.S. at 909). Importantly, "[o]bjectively reasonable good faith includes 'searches conducted in reasonable reliance on subsequently invalidated statutes.'" Id. (quoting Davis, 564 U.S. at 239).

In Chavez, the Fourth Circuit addressed whether the government unconstitutionally acquired Chavez's CSLI without first securing a warrant. Id. at 608. The government had obtained the data from T-Mobile via an *ex parte* order issued pursuant to § 2703(d) of the SCA and Code § 19.2-70.3(B). Id. The Fourth Circuit recognized that Carpenter had invalidated those specific statutory mechanisms, but nevertheless adhered to the controlling precedent in effect at the time the government had originally acted. Id. (citing United States v. Graham, 824 F.3d 421, 425 (4th Cir. 2016) (*en banc*) (holding that "the government does not violate the

---

[3] Appellant filed a motion to strike the portion of the Commonwealth's supplemental brief dedicated to the "good faith" argument. Appellant asserted that the Commonwealth improperly advanced that argument because it did not receive permission from this Court to brief the issue. We conclude that appellant's contentions are without merit because this Court directed the parties to "file supplemental briefs addressing the issue of how the decision in Carpenter impacts the instant case." The Commonwealth's argument that Carpenter does not impact this case because the exclusionary rule does not apply falls squarely within that mandate. Accordingly, appellant's motion to strike is denied.

Fourth Amendment when it obtains historical [CSLI] from a service provider without a warrant"); see also United States v. Zodhiates, 2018 U.S. App. LEXIS 23278 (2d Cir. Aug. 21, 2018) (holding Carpenter inapplicable to the government's acquisition of CSLI in 2011 because the third-party doctrine applied at that time). Moreover, because Chavez had already conceded that the government reasonably relied upon the statutes, the Fourth Circuit held that the good faith exception applied "[w]ithout question." 894 F.3d at 608.

We adopt the analytical framework set forth in Chavez. Appellant's CSLI was acquired in the same way used by the government in Chavez. See id. Appellant does not contend that the statutes were invalid at the time the Commonwealth obtained his CSLI in 2012 and 2015 because Carpenter was decided in 2018. Thus, it necessarily follows that both the detectives and the Commonwealth's attorney had a reasonable, good faith belief that their actions were constitutional at the time. Accordingly, the exclusionary rule does not apply as there was no police or governmental conduct that needed to be deterred at the time it occurred.

Additionally, we note that the Commonwealth provided two examples of other cases, Matthews v. Commonwealth, 65 Va. App. 334, 778 S.E.2d 122 (2015), and Lynch v. Commonwealth, 39 Va. App. 89, 570 S.E.2d 871 (2001), in which the then-existing Fourth Amendment analysis applicable to resolution of the issues therein was changed such that the outcome of previously-adjudicated cases would have been materially affected. As those cases demonstrate, this Court has consistently held that when a law enforcement officer relies in good faith upon the constitutional standards in existence *at that time*, the exclusionary rule will not be implemented *ex post facto*. See, e.g., Matthews, 65 Va. App. at 347-53, 778 S.E.2d at 129-32 (holding that the exclusionary rule did not apply to an impermissibly delayed traffic stop that occurred before the decision in Rodriguez v. United States, 135 S. Ct. 1609 (2015)); Lynch, 39 Va. App. at 93-94, 570 S.E.2d at 873-74 (holding that the exclusionary rule did not apply to the

use of a thermal imaging device to scan a suspect's home, in a case prior to the decision in <u>Kyllo v. United States</u>, 533 U.S. 27 (2001)).

Based upon the good faith exception to the exclusionary rule, <u>Carpenter</u> does not mandate that we reverse appellant's conviction.[4]

Accordingly, we affirm appellant's conviction on remand.

<u>Affirmed.</u>

---

[4] The Commonwealth further argues that this Court should consider a harmless error analysis. In this regard, the Commonwealth asserts that <u>Carpenter</u> is significantly distinguishable because there, the entire volume of CSLI was material to the issues at trial due to (1) the timespan of the robberies and (2) the vastness of the geographical area in which they occurred. <u>See</u> 138 S. Ct. at 2212. Thus, in <u>Carpenter</u>, the CSLI was of paramount value and importance in obtaining the convictions, as the only other principal evidence implicating Carpenter consisted of the testimony of his co-defendants, who had "pegged him as the leader." <u>Id.</u> The government even proclaimed in <u>Carpenter</u> that "the [CSLI] clinched the case." <u>Id.</u> at 2213. According to the Commonwealth, the CSLI in appellant's case was happenstance and tangential in relation to the whole host of other evidence. The trial court referenced a multitude of other facts when it found appellant guilty, and did not rest its decision on the CSLI. Specifically, the trial court found that "the [cell] phone records . . . corroborate the location of the phone numbers used by Fernando Payne and [appellant]." <u>See</u> <u>Massey v. Commonwealth</u>, 230 Va. 436, 443, 337 S.E.2d 754, 758 (1985) (defining corroborative evidence as something "that adds to, strengthens, and confirms" other evidence). The Commonwealth emphasizes these other facts in an effort to highlight the significant dissimilarities between the bodies of evidence presented in each case. However, because this Court has found that the good faith exception applies in this case, a harmless error analysis is not required.