COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Beales and O'Brien
Argued by teleconference

**PUBLISHED**

TOBIAS O. REED

v.      Record No. 1305-15-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
NOVEMBER 12, 2019

UPON REMAND FROM THE SUPREME COURT OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Marvin D. Miller (Law Office of Marvin D. Miller, on briefs), for
appellant.

Victoria L. Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General; Victoria N. Pearson, Deputy Attorney General;
Toby J. Heytens, Solicitor General; Matthew R. McGuire,
Principal Deputy Solicitor General, on brief), for appellee.

Appellant Tobias O. Reed was convicted of distribution of cocaine, third or subsequent

offense.  At trial, the Commonwealth introduced records of Reed's historical cell site location

information ("CSLI") to establish his proximity to the drug transaction on the day of the crime.

This data was initially obtained by the Commonwealth through an *ex parte* court order to the

cell-service provider pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. § 2703,

and the Virginia equivalent, Code § 19.2-70.3.  These statutes permitted the Commonwealth to

obtain the *ex parte* order by "showing that there [were] reasonable grounds to believe . . . the

records or other information sought, [were] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).[1]  The statutes did not require a showing of probable cause.

Reed appealed his conviction to this Court, arguing, in part, that his Fourth Amendment rights were violated by the collection of the CSLI without a warrant.  This Court affirmed without reaching the Fourth Amendment issue, Reed v. Commonwealth, No. 1305-15-4 (Va. Ct. App. Aug. 30, 2016), and the Supreme Court refused Reed's petition for appeal.  Reed v. Commonwealth, No. 161401 (Va. Apr. 26, 2017).  Reed then filed a petition for a writ of *certiorari* with the United States Supreme Court, and his case was held in abeyance until that Court reached a decision in Carpenter v. United States, 138 S. Ct. 2206 (2018).

On June 22, 2018, the United States Supreme Court decided Carpenter.  It held that the "Government's acquisition of [Carpenter's] cell-site records was a search within the meaning of the Fourth Amendment."  Id. at 2220.  It then granted Reed's petition for a writ of *certiorari*, vacated the judgment below, and remanded the case to the Virginia Supreme Court "for further consideration in light of Carpenter."  Reed v. Virginia, 138 S. Ct. 2702 (2018).  The Virginia Supreme Court then remanded the case to this Court with the same instructions.

After reinstating the matter on the docket, we directed the parties to file supplemental briefs addressing how Carpenter impacted Reed's case.  Both briefs were due on the same date. In its supplemental brief, the Commonwealth argued that the exclusionary rule did not apply because at the time Reed's CSLI was sought, the officers acted in good-faith reliance on the SCA and Virginia Code § 19.2-70.3(B).  Reed then filed a motion to strike the Commonwealth's good-faith argument, contending that the argument was waived and not properly before this

---

[1] The Virginia counterpart authorized *ex parte* orders when an "investigative or law-enforcement officer shows that there is reason to believe the records or other information sought are relevant and material to an ongoing criminal investigation."  Code § 19.2-70.3(B).

Court because the Commonwealth did not raise it earlier in the litigation. Reed's motion to strike also responded to the merits of the Commonwealth's good-faith argument.

After reviewing the supplemental briefs and Reed's motion to strike, this Court issued an opinion holding that the exclusionary rule did not apply because "the detectives and the Commonwealth's attorney had a reasonable, good faith belief that their actions were constitutional at the time." Reed v. Commonwealth, 69 Va. App. 332, 339-40 (2018). In a footnote, this Court denied Reed's motion to strike the portion of the Commonwealth's brief that argued the good-faith exception. Id. at 338 n.3.

The Virginia Supreme Court granted Reed an appeal, vacated this Court's order, and remanded the case back to this Court to allow Reed "the opportunity to be heard on the good faith question." We reinstated the case on our docket and directed Reed to file a supplemental brief.[2] We also heard oral argument from both parties. We now consider these arguments.

## I. BACKGROUND

In 2011, Reed began working with Detective Benjamin George as a confidential informant for the Alexandria Police Department. Pursuant to this arrangement, Reed was prohibited from engaging in any drug transaction not authorized by Detective George.

On July 18, 2012, Detective John East was working undercover and using Fernando Payne to purchase drugs from a "second source." Payne called the "second source" and then, as Payne walked off to meet the source and buy the drugs, he handed his phone to Detective East, telling him that if the phone rings and it "says 'Tobias' that's my man. Pick up and tell him I'm coming."

---

[2] We did not request an additional brief from the Commonwealth as it had already submitted a brief on the good-faith issue, but we did receive a letter from the Commonwealth providing additional legal authority.

Detective George, who was also working with Detective East on the transaction, observed Payne waiting for the "second source" to arrive. As Payne waited, Detective George observed Reed drive up in a silver Ford Escape. He watched as Payne entered the vehicle with Reed and exited a few minutes later, rejoining Detective East in his vehicle. When Payne returned to Detective East, he was in possession of cocaine. Detective George realized that Reed was the "second source" from whom Payne bought the cocaine. He testified that he was "one hundred percent" sure that it was Reed whom he saw in the vehicle with Payne. When the police later inspected Payne's phone, they found that the number associated with "Tobias," 571-329-7478, was identical to a number used by Reed.

On August 3, 2012, relying on this information, Detective East applied for, and was granted, an *ex parte* court order pursuant to the SCA and its Virginia equivalent, Code § 19.2-70.3(B). The order required Verizon, the mobile phone service provider for the cell phone number 571-329-7478, to provide the Commonwealth with approximately five months (May 1, 2012 through October 3, 2012) of CSLI for that number.

Approximately two weeks later, an arrest warrant was issued for Reed for the July 18, 2012 distribution of cocaine. However, before it was served, Reed was sentenced to twenty-four months of incarceration for violating conditions of his supervised release on an unrelated matter and immediately taken into custody. It was not until June 5, 2014, when Reed was released from that incarceration, that he was served with the arrest warrant on the cocaine charge.

In January 2015, the Commonwealth issued a subpoena *duces tecum* to Verizon's custodian of records for the historical CSLI for the 571-329-7478 phone number.[3] The trial court limited the amount of CSLI the Commonwealth could receive through the subpoena *duces tecum*

---

[3] The CSLI requested by the subpoena had already been obtained by the *ex parte* order. According to the Commonwealth, the purpose behind the subpoena was to authorize Verizon's custodian of records to appear at trial and authenticate the records.

to the two days prior to the cocaine transaction, the day of the transaction, and the two days following. Reed unsuccessfully attempted to suppress the introduction of the CSLI, but the CSLI from July 18, 2012, was admitted at Reed's trial where the custodian of records for Verizon used that information to testify that Reed's cell phone "pinged" off towers in the general area where the cocaine transaction had occurred and that calls had been routed through those towers.

Reed was found guilty at a bench trial. When announcing the verdict, the trial judge noted, among other comments, that the CSLI placed Reed in the general location of the crime. He stated that "the phone records . . . corroborate the location of the phone numbers used by Fernando Payne and Tobias Reed."

## II. ANALYSIS

As he did in his motion to strike the Commonwealth's good-faith argument, Reed again contends that (1) "the Commonwealth waived its good faith argument when it failed to raise the argument in the trial court or on direct appeal on the merits" and (2) even if good faith could be raised at this juncture, it does not apply. We address each of these arguments in turn.

### Waiver

Reed contends that the Commonwealth waived its good-faith argument by failing to raise the issue earlier – before the case was decided by the United States Supreme Court and remanded to the Virginia Supreme Court.

A similar argument was recently addressed by the Supreme Court in Collins v. Commonwealth, 297 Va. 207 (2019). Similar to the situation in Reed, Collins also involved an unsuccessful motion to suppress evidence of a warrantless search. Id. at 211. On appeal, this Court and the Supreme Court of Virginia affirmed Collins's conviction, albeit on different grounds. Id. The United States Supreme Court reversed, disagreeing with the Virginia Supreme Court's conclusion that the search at issue was justified by the automobile exception. Id. It

remanded the case back to the Virginia Supreme Court, noting that it was "leav[ing] for resolution on remand" whether the search "may have been reasonable on a different basis, such as the exigent circumstances exception to the warrant requirement." Id. (quoting Collins v. Virginia, 138 S. Ct. 1663, 1675 (2018)).

On remand, Collins argued, as Reed does now, that the Commonwealth should not be permitted to raise the good-faith exception to the exclusionary rule as an alternate basis for affirming the conviction because the Commonwealth "did not rely on the exception earlier in [the] litigation." Id. at 212 n.1. The Supreme Court disagreed, explaining that appellate courts "have the discretion to hear an appellee's new arguments upon a remand from the United States Supreme Court for consideration of previously unaddressed issues." Id. The Virginia Supreme Court stated that allowing the appellee to raise new legal arguments on remand is simply an extension of the "right-result-different-reason doctrine," which permits an appellee to "assert for the first time on appeal a purely legal ground for upholding the challenged judgment." Id. In accordance with this principle, the Supreme Court of Virginia permitted the Commonwealth to argue the good-faith exception, and affirmed Collins's conviction on that basis. Id. at 227.

We find no meaningful distinction between this case and Collins.[4] Here, the Commonwealth contends that the evidence should not be excluded because the police were

---

[4] At oral argument before this Court, Reed argued that Collins is distinguishable because the opinion from the United States Supreme Court in Collins noted that it "le[ft] for resolution on remand" whether the search may have been "reasonable on a different basis." Collins v. Commonwealth, 297 Va. at 211 (quoting Collins v. Virginia, 138 S. Ct. at 1675). Thus, Reed contends, the United States Supreme Court specifically directed the Virginia Supreme Court to consider new arguments. However, the rationale in Collins for allowing the Commonwealth to raise the good-faith argument on remand from the United States Supreme Court does not rely on that Court's order; it relies on the premise that allowing new legal arguments on remand is a logical extension of the "right-result-different-reason doctrine." Id. at 212 n.1. Furthermore, the remand order from the United States Supreme Court in Reed permits "further consideration" of the case in light of Carpenter, without any additional limitations on the matters to be considered. Reed v. Virginia, 138 S. Ct. 2702 (2018). Therefore, even that order permits this Court to consider whether Carpenter has no effect on the ultimate outcome of Reed, including an

- 6 -

acting completely in compliance with the law that was in effect at the time the search occurred –
an argument based on "a purely legal ground."  Therefore, the Commonwealth is permitted to
argue that the good-faith exception to the exclusionary rule applies in this case, and we consider
that argument now.

<u>The Good-Faith Exception to the Exclusionary Rule</u>

In <u>Carpenter</u>, the United States Supreme Court held that "an individual maintains a
legitimate expectation of privacy in the record of his physical movements as captured through
CSLI."  <u>Carpenter</u>, 138 S. Ct. at 2217.  It concluded that, given this expectation of privacy, "the
Government must generally obtain a warrant supported by probable cause before acquiring such
records."  <u>Id.</u> at 2221.  The Court found that the SCA, which allowed the government to acquire
cell-site data by a court order only by showing "reasonable grounds" for believing that the
records were "relevant and material to an ongoing investigation," 18 U.S.C. § 2703(d), was "not
a permissible mechanism for accessing historical cell-site records."  <u>Id.</u>  Therefore, <u>Carpenter</u>
indicates that the initial acquisition of CSLI in this case may have been unconstitutional.
However, that fact – standing alone – does not mean the evidence should have been excluded or
that Reed's conviction should be reversed.

While CSLI is relatively new to our jurisprudence, the exclusionary rule is not.  The
exclusionary rule was examined in <u>Collins</u>, where the Supreme Court reiterated that the rule's
origins do not stem from any "personal constitutional right" nor from any mandate implicit in the
Fourth Amendment itself.  <u>Collins</u>, 297 Va. at 214 (quoting <u>Stone v. Powell</u>, 428 U.S. 465, 486

---

argument that the conviction should be affirmed because the good-faith exception to the
exclusionary rule may apply.

In addition, Reed's argument that a new legal theory cannot be raised on remand has
troubling implications.  If his argument were accepted, in every case where a search took place in
reliance on a statute, the Commonwealth would need to argue good faith to the trial court in the
suppression hearing at the trial level and on appeal in the event that the statute was later found to
be unconstitutional on appeal.

(1976)).  "Instead, 'the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . .'"  Stone, 428 U.S. at 486 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).  The rule's "sole purpose . . . is to deter future Fourth Amendment violations."  Collins, 297 Va. at 214 (quoting Davis v. United States, 564 U.S. 229, 236-37 (2011)).  Because the rule "generates 'substantial social costs,' United States v. Leon, 468 U.S. 897, 907 (1984), which sometimes include setting the guilty free and the dangerous at large," the United States Supreme Court has held that suppression of evidence is "our last resort, not our first impulse," Hudson v. Michigan, 547 U.S. 586, 591 (2006).

"[W]hen investigators 'act with an objectively "reasonable good-faith belief" that their conduct is lawful,' the exclusionary rule will not apply."  United States v. Chavez, 894 F.3d 593, 608 (4th Cir.) (quoting Davis, 564 U.S. at 238), cert. denied, 139 S. Ct. 278 (2018).  "Objectively reasonable good faith includes 'searches conducted in reasonable reliance on subsequently invalidated statutes.'"  Id. (quoting Davis, 564 U.S. at 239).  Applying the good-faith exception to searches performed in reliance on subsequently invalidated statutes comports with the purpose of the exclusionary rule because, where a "statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written."  Illinois v. Krull, 480 U.S. 340, 350 (1987).  "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law."  Id. at 349-50.

In 2012, when the CSLI was sought, the officers complied with the provisions of SCA and Virginia Code § 19.2-70.3(B), which were certainly *not* "clearly unconstitutional."  At that time, neither the United States Supreme Court nor a Virginia appellate court had held that a warrant was required before a subscriber's CSLI could be obtained from the cell-service

- 8 -

provider, nor had either yet declared that the SCA was "not a permissible mechanism for accessing historical cell-site records." Carpenter, 138 S. Ct. at 2221. Furthermore, at the time the information was sought, the constitutionality of the SCA was supported by the third-party doctrine, which provides "that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by [the third party] to Government authorities." United States v. Miller, 425 U.S. 435, 443 (1976). Therefore, at the time the CSLI was obtained in this case, the officers were acting in good-faith reliance on the law in effect at the time, and the exclusionary rule, consequently, does not apply. [5]

Despite the presumption of the constitutionality of these two statutes and despite the third-party doctrine, Reed argues that the United States Supreme Court's decision in United States v. Jones, 565 U.S. 400, 404 (2012), would have alerted a reasonable officer that it was unconstitutional for the government to obtain the CSLI without a warrant. He contends that Jones put the government and the officers on notice that "Fourth Amendment protections extended to electronic tracking" and that "individuals have a recognized right to privacy that protects their right not to be constantly surveilled." In Jones, the United States Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" Jones, 565 U.S. at 404 (footnote omitted). However, the Jones decision does not support Reed's argument because the

---

[5] Notably, Carpenter's conviction was ultimately affirmed by the United States Court of Appeals for the Sixth Circuit after the case was remanded by the United States Supreme Court. Just as we do here, the Sixth Circuit held that the exclusionary rule did not apply because the officers in that case acted in good-faith reliance on the SCA when they acquired Carpenter's CSLI. United States v. Carpenter, 926 F.3d 313, 318 (6th Cir. 2019).
Our holding aligns Virginia with the numerous federal appellate courts that have applied the good-faith exception to the exclusionary rule where officers relied on 18 U.S.C. § 2703(d) to obtain CSLI prior to the decision in Carpenter. See United States v. Goldstein, 914 F.3d 200, 203 (3d Cir. 2019); Carpenter, 926 F.3d at 318; United States v. Korte, 918 F.3d 750, 758 (9th Cir. 2019); Chavez, 894 F.3d at 608; United States v. Curtis, 901 F.3d 846, 849 (7th Cir. 2018); United States v. Joyner, 899 F.3d 1199, 1204 (11th Cir. 2018) (per curiam).

Supreme Court based its decision in <u>Jones</u> on the government's trespassory intrusion onto Jones's property when it placed the GPS on the Jeep of Jones's wife. <u>Id.</u> at 404-05. No such physical intrusion occurs when the government seeks CSLI from a third-party cell-service provider, as occurred in this case. Therefore, <u>Jones</u> does not actually govern the question before us and, consequently, does not alter our conclusion that the officers were objectively reasonable in their reliance on the SCA and Virginia Code § 19.2-70.3(B). <u>See</u> <u>United States v. Chambers</u>, 751 Fed. Appx. 44, 47 (2d Cir. 2018) ("[E]ven after <u>Jones</u>, officers could have reasonably believed that the third-party doctrine meant a warrant was not required to obtain cell-site data."), <u>cert. denied</u>, 139 S. Ct. 1209 (2019).

Reed also argues that the good-faith exception cannot apply in this case because this "case concerns the granting of a prosecutor's motion by a trial court" and not "police action." Even if we were to agree with Reed's contention that this case does not involve police action (although Detective East signed the affidavit used to obtain the court order), this contention would not defeat the application of the good-faith exception. We agree with the United States Court of Appeals for the Third Circuit, which addressed this precise issue when it found that the good-faith exception applied when the government actors in that case relied on the SCA to obtain the appellant's CSLI. Dispensing with the appellant's argument, the Court stated, "The relevant inquiry here is not who the state actor is, but rather, whether the state actor had a reasonable, good faith belief that his actions were legal. The prosecutors relied on a then-valid statute whose constitutionality had been confirmed by this Circuit. The good faith exception applies." <u>United States v. Goldstein</u>, 914 F.3d 200, 206 (3d Cir. 2019). Therefore, to the extent that the search in this case was conducted by the Commonwealth's Attorney, a state actor, the good-faith exception still applies.

### III. CONCLUSION

On remand from the Virginia Supreme Court, we permitted Reed to file an additional brief and had oral argument.  After further careful consideration, we conclude that the Commonwealth is permitted to argue that the government acted in good faith, even if it did not raise that issue before the case was remanded from the United States Supreme Court after the Court's 2018 decision in Carpenter.  We also conclude that the good-faith exception to the exclusionary rule applies here because the government actors – both the police officers and the prosecutor – were acting in good-faith reliance on the SCA and Virginia Code § 19.2-70.3(B), which were certainly not "clearly unconstitutional" at the time.  For all of these reasons, we affirm Reed's conviction.

Affirmed.