COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Beales and Lorish
Argued by videoconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.       Record No. 1528-23-2       CHIEF JUDGE MARLA GRAFF DECKER
JANUARY 30, 2024

CHRISTIAN JASON ROWE


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellant.

Steven D. Benjamin; Betty Layne DesPortes (Benjamin &
DesPortes, P.C., on brief), for appellee.


Christian Jason Rowe was indicted for possession of more than five pounds of marijuana

with the intent to distribute and simultaneous possession of a firearm. *See* Code

§§ 18.2-248.1(a)(3), -308.4(C).  Rowe filed a pretrial motion to suppress evidence, which he

alleged was obtained as the result of an unlawful entry into his home.  After a hearing, the circuit

court granted the motion and suppressed the evidence.  Pursuant to Code §§ 19.2-398 and -400,

the Commonwealth appeals that ruling.  The appellee cross-appeals.

The Commonwealth argues that the discovery of the evidence was permissible under the

Fourth Amendment to the United States Constitution because, although the police did not have

an arrest warrant, they had a capias for Rowe's detention that was the functional equivalent of an

arrest warrant and permitted them to enter his residence.  The Commonwealth contends in the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

alternative that the good-faith exception to the exclusionary rule applies. For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND[1]

As part of an investigation of a 2020 homicide, police identified Rowe, a nineteen-year-old, as a suspect. Detectives Lynn Gleason and Brian Waggoner with the Chesterfield County Police Department worked together to prepare "the documents needed" to obtain a capias to take Rowe into custody. After those documents were submitted, a petition was filed in the county juvenile and domestic relations district court for a capias against Rowe. The petition did not contain Waggoner's signature, nor was anything attached to the petition. Instead, an intake officer signed the petition "for Detective Brian Waggoner." The same intake officer issued a capias to take Rowe into custody for second-degree murder and use of a firearm in the commission of a felony.

On July 26, 2022, the Chesterfield County Police Department and U.S. Marshals Task Force executed the capias at Rowe's home. Detectives Waggoner, Joseph Partin, Jeff Whitlock, and N. Crowe of the Chesterfield County Police Department participated in executing the capias and the subsequent search warrant.

Before law enforcement arrived at Rowe's home to execute the capias, Detective Whitlock watched the house for thirty to sixty minutes. After the other officers arrived,

---

[1] On review of a ruling on a motion to suppress, an appellate court "consider[s] the facts in the light most favorable to . . . the prevailing party" below, in this case, Rowe. *Jones v. Commonwealth*, 279 Va. 521, 527-28 (2010) (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008)). "We are bound by the [circuit] court's factual findings unless those findings are plainly wrong or unsupported by the evidence." *Id.* at 528 (quoting *Malbrough*, 275 Va. at 168); *see McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc). To the extent that the circuit court did not make express findings of fact, we view the evidence and the inferences deducible from it in the light most favorable to the defendant, who prevailed below. *See Satchell v. Commonwealth*, 20 Va. App. 641, 648 (1995) (en banc); *see also Brooks v. Commonwealth*, 282 Va. 90, 95 (2011) (interpreting the record in favor of the Commonwealth, the prevailing party at trial).

Detective Partin knocked on the door and announced himself loudly several times. Partin waited about four minutes, but no one answered the door. Consequently, officers breached the front door. After they entered the house, they found Rowe, who was normally in a wheelchair, upstairs on the floor. They then took him into custody.

To make sure no one else was in the home, law enforcement conducted a protective sweep of the house itself. While conducting the sweep, Detective Partin saw marijuana in a bedroom closet.

Based on Partin's observation, Detective Crowe obtained a search warrant for the house. While executing the warrant, detectives found almost eight pounds of marijuana and a handgun.

In his motion to suppress the marijuana and the firearm, Rowe argued, in relevant part, that the law enforcement officers unconstitutionally entered the house because they did not have an arrest warrant. The prosecutor responded that the capias was issued based on probable cause and met the constitutional standard for arrest warrants. She alternatively suggested that the good-faith exception to the exclusionary rule applied.

The circuit court took the case under advisement and later issued a written decision. Citing *Payton v. New York*, 445 U.S. 573 (1980), the court held that the capias was not an arrest warrant or its equivalent and, accordingly, that the entry was presumptively unreasonable. It held that no exigent circumstances existed justifying the forced entry. As a result, the court applied the exclusionary rule and granted the motion to suppress. The case is now before this Court on appeal.

ANALYSIS

On appeal of a ruling granting a defendant's motion to suppress, the Commonwealth has the burden to show that the circuit court's ruling constituted reversible error. *See Cole v. Commonwealth*, 294 Va. 342, 354 (2017); *Commonwealth v. Benjamin*, 28 Va. App. 548, 552-54

- 3 -

(1998) (en banc). A Fourth Amendment challenge presents a mixed question of law and fact, and we review "the [circuit] court's application of the law de novo." *Hicks v. Commonwealth*, 281 Va. 353, 359 (2011) (quoting *Whitehead v. Commonwealth*, 278 Va. 300, 307 (2009)). Although a reviewing court "give[s] deference to the factual findings of the circuit court, . . . we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *See McCain v. Commonwealth*, 275 Va. 546, 552 (2008).

It is well established that "[t]he Fourth Amendment prohibits unreasonable searches and seizures." *Collins v. Commonwealth*, 297 Va. 207, 212 (2019). And warrantless searches and seizures are "presumptively unreasonable." *See Williams v. Commonwealth*, 49 Va. App. 439, 447 (2007). The circuit court held that the entry into Rowe's home was unreasonable because it was not supported by a warrant or exigent circumstances. This ruling forms the basis of the present appeal.

## I. Capias

The Commonwealth first argues that the capias essentially constituted a valid arrest warrant because it is the legal and functional equivalent for constitutional purposes.

To address this argument, we begin with the state law relevant to the capias issued in this case. The Virginia Code provides certain procedures for prosecuting crimes committed by minors. "Proceedings in cases of adults under the age of 21 who are alleged to have committed, before attaining the age of 18, an offense that would be a crime if committed by an adult shall be commenced by the filing of a petition." Code § 16.1-259(C). "[T]he processing of petitions to initiate a case" are "the responsibility of the intake officer." Code § 16.1-260(A). "An intake officer shall have the authority to issue a capias for an adult under the age of 21 who is alleged to have committed, before attaining the age of 18, an offense that would be a crime if committed by

an adult." Code § 16.1-247(K) (noting that an adult may also be "taken into custody pursuant to a warrant, detention order, or capias alleging a delinquent act committed when he was a juvenile"). The "function" of a capias in general "is to authorize a law enforcement officer" to take a particular individual "into custody." *Price v. Commonwealth*, 51 Va. App. 443, 447 (2008) (considering a capias issued for a probation violation).

The question presented in this case is whether the capias against Rowe provided a constitutional basis for law enforcement to forcibly enter his home. In other words, the relevant inquiry is whether the capias, since it was not an arrest warrant, was the functional equivalent of one so as to authorize the entry.

"[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). "Among the many interests served by the Fourth Amendment, the privacy interest in one's home has few equals." *Ross v. Commonwealth*, 61 Va. App. 752, 759 (2013) (quoting *Kyer v. Commonwealth*, 45 Va. App. 473, 480 (2005) (en banc)). It is well established that law enforcement can force entry into a home only with a warrant based on probable cause or under exigent circumstances. *Payton*, 445 U.S. at 588-89 ("[A]n entry to arrest and an entry to search for and to seize property implicate the same interest in preserving the privacy and sanctity of the home[] and justify the same level of constitutional protection."); *Commonwealth v. Campbell*, 294 Va. 486, 493 (2017) ("Despite the absence of a warrant, . . . police may lawfully enter a home . . . if they have probable cause coupled with exigent circumstances.").

A capias is not a warrant, but in analyzing whether the capias at issue was the functional equivalent of an arrest warrant, we must turn to the law governing warrants.[2] "The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause." *Wong Sun v. United States*, 371 U.S. 471, 481-82 (1963). For a warrant to be valid, the issuing judicial officer must "be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whiteley v. Warden*, 401 U.S. 560, 564 (1971). The particular job title of the person issuing the warrant does not determine its validity. *Shadwick v. Tampa*, 407 U.S. 345, 349-50 (1972). The person issuing it, however, must be "neutral and detached" as well as "capable of determining whether probable cause exists for the requested arrest." *Id.* at 350.

In addition, "an arrest warrant for an individual accused of violating [a] criminal law" must "be based on sworn statements establishing probable cause." *Pierce v. Commonwealth*, 48 Va. App. 660, 666-67 (2006) (distinguishing between an arrest warrant and a capias for the arrest of an individual accused of a probation violation). Although a sworn statement must support a probable cause determination upon which the issuance of a warrant is based, the Fourth Amendment does not require that statement to be in writing. *Derr v. Commonwealth*, 242 Va. 413, 420 (1991). Nevertheless, whether oral or in writing, it must be presented to a neutral and detached officer and support a finding of probable cause. *McCary v. Commonwealth*, 228 Va. 219, 231 (1984).

Here, the circuit court concluded that the capias did not meet Fourth Amendment scrutiny. It held broadly that a capias issued pursuant to Code § 16.1-247(K) differs "from an

---

[2] The parties have not cited any Virginia appellate case law analyzing a juvenile capias under Title 16.1, and the Court is not aware of any.

- 6 -

arrest warrant, a bench warrant, or a probation violation capias" because those are issued by "a judge or magistrate." The court reasoned that in contrast, an intake officer is an employee of the Department of Juvenile Justice, part of the executive branch. *See* Va. Dep't of Juv. Just., *Court Service Units*, https://www.djj.virginia.gov/pages/community/court-service-units.htm [https://perma.cc/JZR8-7M3V]. The court further noted both that the intake officer issuing the capias signed as the petitioner requesting it and that Code § 16.1-247(K) does not require a capias to be based on sworn statements establishing probable cause. It ultimately concluded that "[n]owhere in the process of obtaining" the capias was "a magistrate's determination of probable cause interposed between the officer and the citizen."

The circuit court's analysis raises three pivotal issues. The first issue is whether the intake officer acted as a neutral and impartial judicial officer "interposed between the citizen and the police." *See Wong Sun*, 371 U.S. at 481-82. The second issue is whether Detective Waggoner supplied the intake officer "with sufficient information to support an independent judgment that probable cause exist[ed] for the warrant" or, in this case, the capias. *See Whiteley*, 401 U.S. at 564. The third issue is whether the intake officer received that information in the form of a sworn statement available for review as part of the record.

Examining these overlapping issues, we note that the intake officer signed *as the petitioner* "for Detective Brian Waggoner." Waggoner did not sign the petition. The intake officer who signed as the petitioner then issued the capias himself. The petition contains no indication of the information Detective Waggoner provided to the intake officer supporting the belief that Rowe committed the alleged crimes. And there was no testimony about what was

- 7 -

presented to the intake officer.[3] *See, e.g.*, *id.* at 564-65 (holding that the complaint containing only the conclusion that the suspects committed the alleged crime was not sufficient to support the arrest warrant). The capias here contains only language that it "*appears* from the petition . . . that there is probable cause to believe that" Rowe "committed the act alleged." (Emphasis added). The record contains no information about why Gleason and Waggoner developed Rowe as a suspect in the murder. Without evidence in the record supporting probable cause, the reviewing court does not merely assume it existed. *See Janis v. Commonwealth*, 22 Va. App. 646, 652, *adopted upon reh'g en banc*, 23 Va. App. 696 (1996); *see also Cole*, 294 Va. at 354 (noting that at a hearing on a motion to suppress, the Commonwealth bears the burden of establishing that evidence was obtained within the bounds of the Constitution). Last, nothing in the record indicates that Detective Waggoner made a sworn statement to the intake officer.

It is clear that the same intake officer filed the bare-bones petition for the capias, presumably made the probable cause determination, and then issued the capias. No facts in the record support a finding of probable cause, and the record lacks any indication of a sworn statement made to the intake officer. These facts do not show that the intake officer acted in an "impartial" role "interposed between the citizen and the police." *See Wong Sun*, 371 U.S. at 481-82. There is simply no evidence here of what information the intake officer received other than the mere assertion that Rowe committed the alleged offenses. *See generally Adams v. Commonwealth*, 275 Va. 260, 276 (2008) (noting that an affidavit is "bare bones" if it provides "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge" (quoting *United States v. Weaver*, 99

---

[3] Detective Gleason testified that she and Detective Waggoner worked together to prepare "the documents needed to be submitted" in order to obtain a capias for Rowe's arrest. Those documents were not entered into evidence, and neither Waggoner nor the juvenile intake officer testified at the hearing.

F.3d 1372, 1378 (6th Cir. 1996))). As already noted, neither the detective nor the intake officer testified in the circuit court, despite the fact that the issue of the entry into the home based only on the capias was squarely before that court. Based on all of this, we hold that the circuit court correctly concluded that the capias at issue did not meet the Fourth Amendment requirements to qualify as an arrest warrant or the functional equivalent of one. Consequently, the capias did not support the breach into Rowe's home.[4]

## II. Application of the Exclusionary Rule

The Commonwealth alternatively contends that the circuit court erred by not applying the good-faith exception to the exclusionary rule.[5]

The judicially created exclusionary rule "prevents evidence obtained in violation of the [F]ourth [A]mendment from being used against an accused." *Redmond v. Commonwealth*, 57 Va. App. 254, 261 (2010) (quoting *Commonwealth v. Ealy*, 12 Va. App. 744, 750 (1991)). This rule, however, is an extreme remedy that courts do not apply lightly. The Supreme Court of the United States has made clear that the "exclusion [of evidence] 'has always been our last resort, not our first impulse.'" *Herring v. United States*, 555 U.S. 135, 140 (2009) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Accordingly, "[t]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its]

---

[4] In light of this holding, we do not consider the circuit court's broad ruling that no capias issued under Code § 16.1-247(K) can meet Fourth Amendment standards for an arrest warrant. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (citing the doctrine of judicial restraint); *Armstead v. Commonwealth*, 56 Va. App. 569, 576 (2010) (recognizing that an appellate court must decide cases on "the best and narrowest ground available" (quoting *Kirby v. Commonwealth*, 50 Va. App. 691, 698 n.2 (2007))).

[5] Rowe argues that the Commonwealth failed to adequately raise this argument below. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."). After reviewing the record, we conclude that the Commonwealth invoked the good-faith exception to the exclusionary rule sufficiently to preserve the issue for appeal.

application." *Id.* at 141 (second alteration in original) (quoting *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364-65 (1998)).

The traditional test regarding application of the exclusionary rule has two prongs.[6]  To trigger the rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it[] and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Parady v. Commonwealth*, 78 Va. App. 18, 38 (2023) (quoting *Collins*, 297 Va. at 215).  It "serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 555 U.S. at 144.

This inquiry looks to the totality of the circumstances to determine whether officer reliance on the warrant—or in this case, the capias—was objectively reasonable. *Id.* at 145.  In doing so, a court considers the viewpoint of the officers who executed it as well as those "who originally obtained it or who provided information material to the probable-cause determination." *United States v. Leon*, 468 U.S. 897, 923 n.24 (1984) (noting that the Court was not "suggest[ing] . . . that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search").

Case law makes clear that the exclusionary rule should apply if "the warrant was so facially deficient that an . . . officer could not reasonably have assumed it was valid." *Lynch v. Commonwealth*, 39 Va. App. 89, 93 (2002) (quoting *Atkins v. Commonwealth*, 9 Va. App. 462, 464 (1990)).  Similarly, the good-faith exception will "not apply in cases where the issuing magistrate wholly abandoned his judicial role," because "no reasonably well[-]trained officer should rely on the warrant." *Derr*, 242 Va. at 423 (quoting *Leon*, 468 U.S. at 923).  An officer

---

[6] For purposes of this appeal, we assume without deciding that the good-faith analysis applies to the execution of a capias.

does not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Leon*, 468 U.S. at 923).

In conducting our analysis, we look to the capias at issue and what the officers knew. *See Adams*, 275 Va. at 270 (holding that the totality of the circumstances when evaluating good faith includes information the police officers knew). We turn again to the record in the circuit court and reiterate some key points. Here, the capias was not accompanied by any information supporting probable cause. It provided simply that it "*appears* from the petition or warrant filed . . . that there is probable cause to believe" that Rowe committed the alleged offenses. (Emphasis added). *Cf. Midkiff v. Commonwealth*, 54 Va. App. 323, 332 (2009) ("[A]s long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception . . . ." (quoting *Anzualda v. Commonwealth*, 44 Va. App. 764, 781 (2005) (en banc))).

In the instant case, no evidence in the record reflects what information Detective Waggoner presented to the intake officer to establish probable cause. The record contains no relevant written information, and neither Waggoner nor the intake officer testified. Detective Gleason also did not testify about the information she prepared for Waggoner to give to the intake officer. The record simply does not demonstrate why Detectives Waggoner and Gleason suspected Rowe of murder or use of a firearm in the commission of a felony.

The capias is also devoid of any indication that it was based on a sworn statement. It contains no supporting facts and provides only that probable cause appeared to exist based on the petition. The petition also does not contain any supporting facts, providing simply that Rowe committed second-degree murder. "Only by blindly accepting the [petition]'s conclusory statement could one believe" that Rowe had committed the murder and accompanying firearm charge. *See Colaw v. Commonwealth*, 32 Va. App. 806, 814 (2000) (analyzing a search warrant

issued based on conclusory allegations). In fact, the intake officer signed the petition as the petitioner on behalf of the detective, further suggesting that he was not acting as an impartial judicial officer. The confluence of these circumstances rendered reliance on the capias objectively unreasonable. Simply put, a reasonable law enforcement officer would not believe that this capias was a valid arrest warrant or the functional equivalent of one. *See Janis*, 22 Va. App. at 653 (holding that the affidavit supporting the search warrant was so deficient that any reliance on it was unreasonable).

Therefore, under these circumstances, the circuit court did not err by rejecting application of the good-faith exception to the exclusionary rule.[7]

CONCLUSION

The record does not show that the intake officer acted impartially or received a sworn statement supporting an independent determination of probable cause to believe that Rowe committed the murder and the accompanying firearm offense. On these facts, the circuit court correctly held that the capias did not meet the Fourth Amendment requirements for an arrest warrant or its functional equivalent. Further, the court did not err by applying the exclusionary rule here. For these reasons, we affirm the decision of the circuit court and remand for further proceedings consistent with this opinion.

*Affirmed and remanded.*

---

[7] In light of our holding that the court did not err in granting the motion to suppress, we do not reach Rowe's assignments of cross-error. *See Armstead*, 56 Va. App. at 576.